# IN THE SUPREME COURT OF TEXAS

════════════
No. 11-0008
════════════

HONORABLE HOPE ANDRADE, PETITIONER,

v.

DON VENABLE, RESPONDENT

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

**PER CURIAM**

Don Venable seeks to enjoin Dallas County from identifying candidates' political party affiliations and providing a "straight-party" option on general election ballots. We must decide whether Venable has standing to pursue these claims. Because Venable has no interest distinct from that of the general public and has not established taxpayer standing under *Williams v. Lara*, 52 S.W.3d 171, 179 (Tex. 2001), we reverse in part the court of appeals' judgment and render judgment dismissing Venable's claims against Secretary of State Hope Andrade.

The Texas Election Code requires that election ballots identify each candidate's party affiliation. TEX. ELEC. CODE § 52.065(c). It also mandates that ballots contain a straight-party voting option. *Id*. § 52.071(b). Venable believes that these requirements violate Article VI, Section

4 of the Texas Constitution, because they neither punish fraud nor preserve ballot box purity.[1] According to Venable, these statutory requirements merely benefit political parties, which is not a legitimate governmental function. Venable also argues that these same provisions violate Article III, Section 52(a) because public money is used to advance the interests of discrete political parties.[2]

Venable sued Dallas County Elections Administrator Bruce Sherbet to permanently enjoin him from: (1) using county funds to identify candidates' political party affiliations and (2) providing a straight-party option on any general election ballot. Venable later added Secretary of State Hope Andrade. Sherbet and Andrade filed jurisdictional pleas. Sherbet challenged the existence of facts

---

[1] Article VI, Section 4 of the Texas Constitution provides:

> In all elections by the people, the vote shall be by ballot, and the Legislature shall provide for the numbering of tickets and make such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box; and the Legislature shall provide by law for the registration of all voters.

TEX. CONST. art. VI, § 4.

[2] Article III, Section 52(a) provides:

> Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company. However, this section does not prohibit the use of public funds or credit for the payment of premiums on nonassessable property and casualty, life, health, or accident insurance policies and annuity contracts issued by a mutual insurance company authorized to do business in this State.

TEX. CONST. art. III, § 52(a).

to support Venable's claim of taxpayer standing. Andrade argued that, even accepting all of his allegations as true, Venable did not allege facts sufficient to affirmatively demonstrate jurisdiction.

Venable then amended his petition, alleging the following jurisdictional facts: (1) he is a property taxpayer in Dallas County, (2) the expenses incurred in the conduct of a general election are solely Dallas County's financial responsibility, (3) Sherbet, a salaried county employee, is the Dallas County Elections Administrator, (4) preparation of the official ballots in Dallas County for general elections is one of Sherbet's ministerial responsibilities, (5) in addition to the required actions needed to prepare a ballot, Sherbet is required to satisfy the additional ballot construction rules as required by the Texas Election Code relating to the printing of political party names and straight-party tickets, and (6) the Dallas County Elections Department is fully funded by the Dallas County General Fund for fiscal year 2010. Venable incorporated by reference a purported copy of Dallas County's adopted budget for fiscal year 2010.

The trial court granted both pleas and Sherbet's accompanying motion to dismiss. Venable appealed. The court of appeals held that Venable's amended petition pleaded sufficient facts to affirmatively demonstrate taxpayer standing. ___ S.W.3d ___, ___. Although the court acknowledged that Venable did not explicitly state that Dallas County was actually expending public funds on the allegedly illegal activity, the court construed his pleadings to say that Dallas County actually expends public funds when it includes the political party identification of the candidates on the ballot and offers a straight-party voting option. The court also held that Sherbet failed to present evidence to support his challenge to the existence of jurisdictional facts. The court reversed the trial court's judgment and remanded the case to the trial court. *Id.* at ___.

Only Andrade petitioned this Court for review, arguing that Venable lacks taxpayer standing because he failed to plead facts showing that the government actually spends money on the activity he challenges.

Generally, "a citizen lacks standing to bring a lawsuit challenging the lawfulness of governmental acts." *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 6 (Tex. 2011). This is because "[g]overnments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) (alteration in original) (citing *Osborne v. Keith*, 177 S.W.2d 198, 200 (Tex. 1944)). "Thus, '[s]tanding doctrines reflect in many ways the rule that neither citizens nor taxpayers can appear in court simply to insist that the government and its officials adhere to the requirements of law.'" *Andrade*, 345 S.W.3d at 7 (quoting CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3531.10 (3d ed. 2008)).

Unless standing is conferred by statute, a plaintiff must show that he has suffered a particularized injury distinct from the general public. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555–56. This bar against generalized grievances applies to suits brought by citizens as voters. *See Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) ("No Texas court has ever recognized that a plaintiff's status as a voter, without more, confers standing to challenge the lawfulness of governmental acts."). However, under Texas law, a narrow, judicially-created exception exists: a taxpayer has standing to sue to enjoin the illegal expenditure of public funds, and need not demonstrate a particularized injury. *Williams,* 52 S.W.3d at 179; *Bland Indep. Sch. Dist.*, 34 S.W.3d at 556; *Osborne*, 177 S.W.2d at 200; *Hoffman v. Davis*, 100 S.W.2d 94, 95 (Tex. 1937); *City of Austin v. McCall*, 68 S.W.

4

791, 794 (Tex. 1902). "Implicit in this rule are two requirements: (1) that the plaintiff is a taxpayer; and (2) that public funds are expended on the allegedly illegal activity." *Williams*, 52 S.W.3d at 179.

In *Williams*, we examined taxpayer standing in a challenge to a religious education program at a county jail. *Id.* at 177–79. The plaintiff argued that because he paid taxes, and public funds helped administer the program at the corrections center, he had standing to enjoin its allegedly illegal operation. *Id.* at 179. The money was used to feed, clothe, and house the prisoners. *Id.* Two county-paid employees spent a portion of their time supervising the program. *Id.* This was enough, the taxpayer alleged, to conclude that the county was spending public money on this allegedly illegal activity. *Id.* We considered for the first time what constitutes "expending funds" in a taxpayer standing case. *Id.* at 181. To help answer this question, we looked to federal jurisprudence regarding municipal taxpayer standing. *Id.*

We noted that to be entitled to federal municipal taxpayer standing, "a litigant must prove that the government is actually expending money on the activity that the taxpayer challenges; merely demonstrating that tax dollars are spent on something related to the allegedly illegal conduct is not enough." *Id.* We cited several cases in which taxpayers lacked standing, including cases where the funds would have been spent regardless of the challenged activity.[3] We agreed with the county that

---

[3] *See, e.g.*, *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 794 (9th Cir. 1999) ("Doe identifies no tax dollars that defendants spent solely on the graduation prayer, which is the only activity that she challenges. In fact, Doe acknowledges affirmatively that '[t]he prayers . . . cost the state no additional expense.' Doe instead alleges that defendants spent tax dollars on renting a hall, printing graduation programs, buying decorations, and hiring security guards. But those are ordinary costs of graduation that the school would pay whether or not the ceremony included a prayer. Therefore, those expenditures cannot establish taxpayer standing.") (alterations in original); *Gonzales v. N. Twp. of Lake Cnty., Ind.*, 4 F.3d 1412, 1416 (7th Cir. 1993) ("In this case, however, the plaintiffs' claim is undercut by their inability to show that tax revenue is spent for the crucifix. . . . [A]lthough Township funds are spent maintaining the Park areas surrounding the crucifix, this cost would be incurred with or without the presence of the crucifix. Without evidence

5

because the money used to feed, clothe, and house the inmates would be spent regardless of the religious program's existence, those expenditures alone were insufficient to establish that the government actually expended money on the challenged activity. *Id.* at 182.

We determined that other aspects of the program's operation involved the use of public funds, however. *Id.* We held that because county-paid employees spent a "significant amount of the County's time" operating the program, including shaping and promoting its religious curriculum, county funds were expended in operating the program. *Id.* at 183. We based our conclusion not just on the fact that salaried county employees worked on the program, but also because the record established that the employees' involvement was "anything but incidental." *Id.* There, the employees "personally and directly operated and managed" the challenged program "while on the county payroll." *Id.*

Thus, under *Williams*, in order to establish taxpayer standing a plaintiff must plead facts showing that the government is *actually* spending money on the allegedly illegal activity—not on a related legal activity. *See id.* at 182–83. This must be a measurable, added expenditure—not one that would have been made in spite of the allegedly illegal activity. *See id.* at 182. The plaintiff must be able to allege that the challenged activity "is supported by any separate tax or paid for from any particular appropriation or that it adds any sum whatever to the cost of conducting the [challenged activity]." *Doremus v. Board of Educ. Of the Borough of Hawthorne*, 342 U.S. 429, 433 (1952). Moreover, the expenditure cannot be *de minimis*—it must be significant. *Cf. id.* at 434

of expenditure of tax revenues, the plaintiffs cannot claim standing by virtue of their taxpayer status.").

(explaining the Court's finding of a justiciable controversy in a case that "showed a measurable appropriation or disbursement of school-district funds occasioned solely by the activities complained of"); *Williams*, 52 S.W.3d at 183 (noting that county-paid employees "spent a significant amount" of time operating the challenged program). Unless a plaintiff can meet these requirements, there has not been a pecuniary injury to the taxpayers generally and the taxpayer's interest is not direct enough for his suit to proceed.

The parties do not dispute that Venable is a Dallas County resident and taxpayer. We must decide whether Venable has alleged facts showing that Dallas County expends public funds when it includes candidates' party affiliations and the straight-party option on the ballot.

Venable contends his "sole burden concerning the issue of public funding was to *allege* the use of public money in the challenged conduct." But *Williams* makes clear that a taxpayer must plead facts showing that the government is actually spending money specifically on the challenged activity. *Williams*, 52 S.W.3d at 178–81. A taxpayer plaintiff, like any other plaintiff, carries the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

Venable's petition incorporated by reference Dallas County's adopted budget for fiscal year 2010, which reflected general election expenses. He argues that the budget shows that public funds were being spent on the challenged activities. But simply including Dallas County's budget does not show that a measurable amount of public funds are being expended solely on the allegedly illegal activity. As the court of appeals noted, Venable's pleadings did "not explicitly state that Dallas

7

County is actually expending public funds on the allegedly illegal activity." ___ S.W.3d at ___. But because he "attempt[ed] to link the expenditure of public funds to the allegedly illegal activity," the court of appeals generously construed the pleadings "to claim that Dallas County is actually expending public funds . . . when it includes the political party identification of the candidates on the ballot and offers a straight-party voting option." *Id.* at ___.[4]

We disagree. Venable has, at most, alleged that Dallas County spends money on elections—not that preparing and printing ballots with candidates' political affiliations and a straight-party voting option costs any more than ballots without them. As we stated in *Williams*, merely demonstrating that tax dollars are spent on something related to the allegedly illegal conduct is not enough. *Williams*, 52 S.W.3d at 181. Nor is it sufficient for the taxpayer plaintiff to point to costs that would have been incurred regardless of the allegedly illegal activity. *Id.* at 181–82. A taxpayer does not have an interest direct enough to warrant standing unless the activity challenged involves an expenditure of public funds that would not otherwise be made.

Venable argues that he has complied with *Williams* because he has alleged that county employees were involved in the preparation of the ballots, which were required by the Elections Code to identify candidates' political parties and to offer a straight-party voting option. But as one of the cases we cited in *Williams* explained, "[n]early all governmental activities are conducted or

_____

[4] We do not agree with the court of appeals that the record does not show that the trial court gave Venable the opportunity to amend his pleadings. ___ S.W.3d at ___. Venable had an opportunity to amend his petition after Andrade and Sherbet filed their jurisdictional pleas, and in fact, he did so. Even construing his petition liberally and looking to his intent, he failed to affirmatively demonstrate that he has taxpayer standing because he has not shown that the county actually expends funds on the activity he challenges.

8

overseen by employees whose salaries are funded by tax dollars. To confer taxpayer standing on such a basis would allow any municipal taxpayer to challenge virtually any governmental action at any time." *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 74 (2d Cir. 2001). A government employee's time spent on the allegedly illegal activity must be significant to serve as a basis for taxpayer standing. *Williams*, 52 S.W.3d at 183.

Here, Dallas County would incur labor costs for preparing the ballots or programming the computers for electronic voting, regardless of the inclusion of candidates' party affiliations and a straight-party voting option on the general election ballot, and Venable does not allege that there is any incremental increase in cost related to the statutory requirements. Even if Venable were able to identify the additional labor costs the county incurred for time county-paid employees spend on the activity he challenges, *Williams* requires that such time be "significant"—something Venable has neither pleaded nor proved. *Id.*

Venable has not pleaded facts showing that measurable and significant public funds were being spent on the activity he challenges, and thus, has failed to affirmatively demonstrate taxpayer standing. Because Venable has no interest distinct from that of the public generally, and his claims fall outside the narrow taxpayer exception to the bar against generalized grievances, he lacks the requisite and particularized stake to warrant standing. Accordingly, we grant the petition for review, and without hearing oral argument, we reverse in part the court of appeals' judgment and render judgment dismissing Venable's claims against Andrade. TEX. R. APP. P. 59.1, 60.2(c).

9

**OPINION DELIVERED**: May 18, 2012