# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00528-CV

**City of New Braunfels, Texas, Appellant**

**v.**

**Stop The Ordinances Please; W. W. GAF, Inc. d/b/a Rockin "R" River Rides;
Texas Tubes; Tourist Associated Businesses of Comal County; Union River LLC d/b/a
Landa River Trips; Chuck's Tubes; Waterpark Management, Inc.; Tri-City Distributors,
LP; et al., Appellees**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. C2007-0387B, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This interlocutory appeal arises from a continuation of the same underlying disputes

and litigation that gave rise to *STOP v. City of New Braunfels*, which center on efforts by the City of

New Braunfels (City) to restrict, through the exercise of its municipal regulatory authority, the

presence of beverages and containers on the portions of the Guadalupe and Comal rivers situated

within City limits. 306 S.W.3d 919 (Tex. App.—Austin 2010, no pet.) (*STOP I*). As in *STOP I*, the

issue before us is not the ultimate validity of these regulations, much less their wisdom as a matter

of policy, but only whether a group of citizens seeking to challenge the regulations' legality have

demonstrated their standing to present their claims in court.

The appellees here sued the City to challenge its latest regulations of this sort, and

the City challenged appellees' standing to do so through pleas to the jurisdiction. Concluding that

appellees had sufficiently demonstrated their standing to prosecute their claims, the district court denied the City's plea in full. The City now appeals. We agree with the district court and affirm its order denying the City's pleas with the exception of the claims asserted by a single appellee, Stone Randall Williams. However, we conclude that Mr. Williams's failure to establish his standing is the sort of jurisdictional defect for which Texas law bars immediate dismissal, and instead entitles him to the opportunity to replead.

## BACKGROUND

*STOP I*

As we detailed in *STOP I*, the past decade has seen intense public debate among New Braunfels citizens and local officials regarding what some view as an overabundance of alcohol-fueled "tubers" and resultant social ills along the Comal and Guadalupe rivers. *See id.* at 922. The controversy has prompted policy responses that have included the New Braunfels City Council's enactment of four ordinances in 2006 and 2007 that restrict the public use or possession of "volume drinking devices" within the City, the use or possession of open containers of five ounces or less on public waters within the City, the consumption of alcohol in public parks within the City, and the possession of "coolers" ("a receptacle or apparatus capable of cooling or keeping cold foods and drinks which carry more than one container") with a capacity exceeding sixteen quarts on public waters within the City. *See id.* at 922-23 (describing, respectively, the "Beer Bong Ordinance," the "Five-Ounce Container Ordinance," the "Parks Ordinance," and the "Cooler & Container Ordinance").

In response, STOP—"Stop The Ordinances Please," which alleged itself to be an "unincorporated association of business owners and other parties interested in the use and enjoyment of the Comal and Guadalupe rivers" within City limits—sued the City in 2007 seeking declarations that the ordinances were invalid and injunctive relief against their enforcement.[1] *See id.* at 923-24. STOP was later joined as a plaintiff by five of its individual members, four local businesses that catered to tubers (termed "Outfitter Plaintiffs") and Williams, who alleged that he had been cited for violating the Cooler & Container Ordinance. *See id.* at 924. The plaintiffs collectively sought declarations that the ordinances exceeded the City's constitutional and statutory authority because (1) the portions of the Comal and Guadalupe flowing within the City are navigable streams whose water and riverbed are owned by the State and are beyond the City's regulatory authority; (2) the ordinances are preempted by State authority under the alcoholic beverage code; and (3) certain of the ordinances that are purportedly aimed at litter control, including the Cooler & Container Ordinance, violate section 361.0961 of the health and safety code, which limits local authority to regulate, "for solid waste management purposes, the sale or use of a container or package in a manner not authorized by state law . . . ."[2] *See id.* at 923-24.[3]

---

[1] *See* Uniform Declaratory Judgments Act (UDJA), Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008). Absent any material intervening substantive changes, we cite the current version of this and other statutes for convenience.

[2] *See* Tex. Health & Safety Code Ann. § 361.0961 (West 2010).

[3] The plaintiffs also challenged a 2001 ordinance imposing a "river management fee." These claims were severed and are not at issue in this proceeding. *See STOP v. City of New Braunfels*, 306 S.W.3d 919, 925 (Tex. App.—Austin 2010, no pet.) (*STOP I*); *see also City of New Braunfels v. W.W. GAF, Inc., d/b/a Rockin "R" River Rides*, No. 11-10-00009-CV, 2012 WL 423919 (Tex. App.—Eastland Feb. 2, 2012, pet. denied) (mem. op.) (subsequent proceedings).

The City interposed a plea to the jurisdiction challenging the standing of each plaintiff to prosecute these claims. *See id*. at 924-25. The City challenged only the sufficiency of the plaintiffs' pleading allegations and did not present evidence in an attempt to negate the facts alleged. *See id*. The Outfitter Plaintiffs and Williams asserted that the pleadings, taken as true, demonstrated that each had individual standing by virtue of incurring a particularized injury from the ordinance that was distinct from that incurred by the general public. In the alternative, each claimed standing as a City taxpayer. *See id*. at 927, 930-31. STOP, in turn, urged that the pleadings established its associational standing derived from the standing of at least one of its members. *See id*. at 931-32. The district court ultimately granted the City's plea as to these claims and dismissed the claims for want of subject-matter jurisdiction. *See id.* at 925. The plaintiffs appealed to this Court, thereby presenting the issues we addressed in *STOP I. See id.*

In *STOP I*, we affirmed the dismissal of all of Williams's claims and the Outfitter Plaintiffs' claims concerning three of the four ordinances they sought to challenge. As to those claims, we concluded that the plaintiffs (and, derivatively, STOP) had failed to allege facts that would establish their particularized injury, nor had they sought to restrain or enjoin an expenditure of City funds, as is required for taxpayer standing. *See id.* at 927-32. However, we concluded that the Outfitter Plaintiffs had alleged facts that would establish the requisite particularized injury from the Cooler & Container Ordinance. *See id*. at 928. Consequently, we held that the Outfitter Plaintiffs had standing to prosecute their claims seeking to invalidate and restrain enforcement of the Cooler & Container Ordinance and, to the extent the issue was relevant to that ordinance's validity, their claim seeking a declaration that the Comal and Guadalupe are navigable streams.

4

*See id.* at 927-31. We likewise held that STOP had sufficiently pled the facts required to establish its associational standing to prosecute the same claims based on the Outfitter Plaintiffs' individual standing. *See id.* at 931-32. We reversed the judgment dismissing these claims and remanded them to the district court. *See id.* at 932. The City did not seek further appellate review of our order.

**Subsequent developments**

Effective January 1, 2012, the New Braunfels City Council enacted a new ordinance (the "Disposable Container Ordinance"[4]) that prohibits the possession of food or beverages in, or use of, a "disposable container" on or in the public waters of the Guadalupe or Comal within City limits.[5] "Disposable container" is defined as "a receptacle designed to be used once, then thrown away," expressly including "metal and aluminum cans, glass containers, Styrofoam cups and containers, cardboard containers, paper sacks, boxes, paper napkins and towels, and plastic containers and utensils."[6]

As had occurred with the previous ordinances, the City's enactment of the Disposable Container Ordinance elicited opposition that initiated court challenges to the enactment's constitutional and statutory validity. In the still-pending lawsuit that had given rise to *STOP I*, three of the surviving plaintiffs—STOP and "Outfitter Plaintiffs" Texas Tubes and W. W. GAF, Inc., d/b/a Rockin' "R" River Rides (collectively, the "*STOP I* Appellees")—filed an amended petition

---

[4] Also termed the "Can Ban."

[5] The Disposable Container Ordinance is currently codified at City of New Braunfels, Mun. Code § 86-14 (a)(2) (2012).

[6] *See id.*

5

that incorporated their surviving claims and legal theories challenging the Cooler & Container Ordinance, added largely parallel claims and theories challenging the Disposable Container Ordinance, and appeared to assert some new legal theories of relief against both ordinances. The amendments also further amplified the factual allegations relevant to the plaintiffs' standing and sought to cure the prior defect in the taxpayer-standing allegations by adding claims explicitly seeking to restrain the City from "illegally expending taxpayer funds to exert its police powers to enforce city ordinances that violate the Constitution of the State of Texas." *Cf. id.* at 930.

On the same day that the *STOP I* Appellees filed their amended petition, a new group of plaintiffs filed an original petition in intervention in the suit, asserting claims, legal theories, and underlying factual allegations that were identical to those of the *STOP I* Appellees. These intervenors (collectively, the "Intervenor Appellees") are:

- Three local businesses that cater to tubers, Union River LLC d/b/a Landa River Trips, Chuck's Tubes, and Waterpark Management, Inc. (the "Outfitter Intervenors"). The Outfitter Intervenors asserted claims challenging both the Cooler & Container Ordinance and the Disposable Container Ordinance, and likewise seeking the related declaration as to the navigability of the Comal and Guadalupe rivers. The Outfitter Intervenors claimed standing by virtue of particularized injury from the two ordinances and as taxpayers.

- Tri-City Distributors, L.P., a local business that allegedly sells beverages (both alcoholic and non-alcoholic) at wholesale to retailers who, in turn, cater to customers who consume the beverages while tubing within City limits. Tri-City asserted the claims challenging only the Disposable Container Ordinance, and claimed standing by virtue of particularized injury and as a taxpayer.

- Tourist Associated Businesses of Comal County (TABCC), which alleged that it is an unincorporated association "whose members include businesses that own property in the City of New Braunfels, pay taxes to the City of New Braunfels, have invested in food and beverage products in disposable containers to sell for use on the Guadalupe and Comal rivers within the New Braunfels city limits, or provide goods and services to tubers who consume food and beverages in disposable containers and use coolers on the rivers." TABCC alleged

6

that its members included the Outfitter Intervenors and Tri-City, and claimed associational standing to challenge both ordinances predicated on its members' individual standing.

- Stone Randall Williams, the individual plaintiff whose claims challenging the Cooler & Container Ordinance were dismissed in *STOP I*. This time, Williams asserted claims challenging only the Disposable Container Ordinance, claiming standing by virtue of particularized injury, including being cited for violating the ordinance, and as a taxpayer.[7]

In addition to these claims for declaratory relief and permanent injunctive relief, both sets of appellees sought temporary injunctive relief pending trial.

In response, the City, while no longer challenging the *STOP I* Appellees' standing to challenge the Cooler & Container Ordinance, interposed a plea to the jurisdiction challenging their standing to assert their parallel claims concerning the Disposable Container Ordinance. The City likewise filed a plea to the jurisdiction challenging the standing of all of the Intervenor Appellees to assert any of their claims, including both those challenging the Disposable Container Ordinance and those challenging the Cooler & Container Ordinance. As in *STOP I*, the City challenged only the sufficiency of appellees' pleadings and allegations; it did not present evidence to negate the facts that the appellees had pled. However, appellees filed a response in opposition to the City's pleas to which they attached evidence relevant to their standing. This evidence included affidavits, documentary evidence reflecting economic losses they attributed to the two ordinances, records reflecting their payment of property taxes to the City, and a printout of a slide presentation referencing $400,000 in expenditures specifically dedicated to "disposable container enforcement."

---

[7] The *STOP I* Appellees' amended petition and the petition in intervention were similar to the pleadings filed by the same plaintiffs in an earlier lawsuit in Travis County that named the City and various state officials as defendants. It appears that the above-described pleadings were filed in the pending *STOP I* suit after venue of the Travis County suit was transferred to Comal County.

A hearing was set on both the City's pleas and appellees' request for temporary injunctive relief. At the City's insistence, the district court first considered the pleas to the jurisdiction. The parties presented no witness testimony, only argument, although appellees formally introduced into evidence some, if not all, of the proof they had previously filed with the district court.[8] Following the presentation, the district court took the jurisdictional issues under advisement, but later overruled the City's pleas to the jurisdiction in their entirety. The order did not elaborate on the district court's reasoning, and no findings of fact and conclusions of law were requested or filed. The City immediately perfected an interlocutory appeal from the district court's order, *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2012), thereby invoking the automatic statutory stay against any further proceedings on appellees' request for temporary injunctive relief or on the merits of their claims. *Id.* § 51.014(b).

## STANDARD OF REVIEW

A plea to the jurisdiction challenges a trial court's authority to decide the subject matter of a cause of action. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Analysis of whether this authority exists begins with the plaintiff's live pleadings. *Id.* at 226. The plaintiff has the initial burden of alleging facts that affirmatively

---

[8] In their brief on appeal, appellees represent that they did not attempt to get the slide show printout admitted into evidence at the hearing, but the reporter's record seems to reflect that all of the proof appellees had previously filed with the district court, including this document, was admitted as a single exhibit. In any event, it suffices for plea-to-the-jurisdiction purposes that appellees had previously filed this document as an attachment to its response in opposition to the City's plea. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 & n.6, 231 (Tex. 2004); *Texas Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 697-98 (Tex. App.—Austin 2011, no pet.).

8

demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). Mere unsupported legal conclusions do not suffice. *See Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 515-16 & nn.7-8 (Tex. App.—Austin 2010, no pet.).

The City, as noted, has challenged only whether appellees have alleged facts sufficient to establish their standing—it did not present evidence in an attempt to negate the existence of the jurisdictional facts the appellees have pled. *Cf. Miranda*, 133 S.W.3d at 227; *see also Combs v. Entm't Publ'ns, Inc.*, 292 S.W.3d 712, 719 (Tex. App.—Austin 2009, no pet.) (summarizing different standards governing evidentiary challenges to the existence of pleaded jurisdictional facts where such facts implicate both jurisdiction and the merits versus where they implicate only jurisdiction). In this procedural posture, we take as true the jurisdictional facts appellees have pled, liberally construe them with an eye to the pleader's intent, and determine whether they affirmatively demonstrate the trial court's subject-matter jurisdiction over the claims asserted. *See Miranda*, 133 S.W.3d at 226; *Creedmoor-Maha*, 307 S.W.3d at 513, 516 n.8. This is a question of law that we review de novo. *See Miranda*, 133 S.W.3d at 226; *Creedmoor-Maha*, 307 S.W.3d at 513, 516 n.8. If we conclude that the appellees have failed to meet their pleading burden because they omit sufficient facts and the pleadings do not reveal an incurable defect in jurisdiction, appellees are entitled to the opportunity to amend. *See Miranda*, 133 S.W.3d at 226-27.

We may also consider the evidence appellees presented in opposition to the City's plea, and must do so to the extent necessary to resolve the jurisdictional issues. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000); *see Hendee v. Dewhurst*, 228 S.W.3d 354, 367, 382

9

(Tex. App.—Austin 2007, pet. denied) (in appeal of trial court order granting plea to jurisdiction challenging only plaintiffs' pleadings, considering both those pleadings and evidence plaintiffs had attached to determine if either established jurisdiction).[9]

## ANALYSIS

Turning now to the pleadings and evidence in this case, it is immediately apparent that *STOP I* controls our disposition of virtually all of the City's current jurisdictional challenges.

In *STOP I*, we held that the Outfitter Plaintiffs had sufficiently pled particularized injury from the Cooler & Container Ordinance distinct from that incurred by the general public by alleging that the ordinance's cooler-size restriction had directly restricted use of their property—preexisting inventories of larger coolers. *See STOP I*, 306 S.W.3d at 927-28; *cf. id.* at 929-30. Rejecting arguments advanced by the City, which insisted that the Outfitter Plaintiffs were required to plead a regulatory takings claim in order to have standing and had not, we emphasized that the "injury-in-fact" required for standing was conceptually distinct from, and did not require, a legal injury (i.e., a viable cause of action on the merits) or the deprivation of a "vested right" to use the coolers that would violate due process. *See id.* at 926-27, 929. Instead, the point of the requirement, we explained, was merely to identify "some legally cognizable interest that is sufficiently unique to the plaintiff, as distinguished from the general public, to ensure that the plaintiff has a sufficient personal stake in the controversy so that the lawsuit would not yield a mere

_____

[9] *See also Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (in sua sponte appellate determination of plaintiff's standing, courts consider the petition, construed in the pleader's favor, and, to the extent necessary, review the entire record to determine if any evidence supports subject matter jurisdiction).

advisory opinion or draw the judiciary into generalized policy disputes that are the province of the other branches." *Id.* at 927. We concluded that this requirement was met by the pleading allegations regarding the Outfitter Plaintiff's ownership of non-compliant coolers and the effects of the ordinance upon them:

> Liberally construing their pleadings, the Outfitter Plaintiffs allege they had invested in ice chests with larger capacities for purposes of renting them to tubers and that the Cooler & Container Ordinance subsequently banned those coolers from the portions of the Comal and Guadalupe within City limits. The pleadings, liberally construed, further allege that this restriction denuded those coolers of their value as property that can be rented to tubers wishing to tube within City limits. Further, the City acknowledges that the Outfitter Plaintiffs' allegations support the inference that they incurred additional expenses in purchasing smaller coolers complying with the ordinance to replace the non-compliant larger ones.
>
> By alleging that the Cooler & Container Ordinance restricted their use of their property, caused them to incur additional expenses, and damaged or destroyed their market for larger cooler rentals within the City limits, the Outfitter Plaintiffs have demonstrated the required actual, concrete, and particularized infringement of their legally protected interests necessary for standing. . . . *Lake Medina Conserv. Soc'y v. Texas Natural Res. Conserv. Comm'n*, 980 S.W.2d 511, 516 (Tex. App.—Austin 1998, pet. denied) (association comprised of lakeside property owners and waterfront businesses had standing to challenge administrative action that would cause lake levels to drop); *Texas Rivers Prot. Ass'n v. Texas Natural Res. Conserv. Comm'n*, 910 S.W.2d 147, 151-52 (Tex. App.—Austin 1995, writ denied) (citing harm to canoe trip guides' "business opportunities" as supporting individual guides' standing to challenge agency action that would lower river levels); *see also National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 281-84 (6th Cir. 1997) (firearms manufacturers had standing to challenge weapons restrictions; observing that "courts have routinely found . . . a justiciable controversy when suit is brought by the plaintiff subject to a regulatory burden imposed by a statute"); *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 61 (9th Cir. 1994) ("It is well settled that a provider of goods or services has standing to challenge government regulations that directly affect its customers and restrict its market.") (citing cases). We likewise conclude that the Outfitter Plaintiffs have sufficiently alleged their injuries are "fairly traceable" to the Cooler & Container Ordinance and would likely be redressed by invalidating the cooler restriction (which would allow them to rent the larger coolers again). *See Lujan* [*v. Defenders of Wildlife*], 504 U.S. [555,] 560-61

11

[(1992)]. Consequently, the Outfitter Plaintiffs have demonstrated standing to prosecute their claims seeking to invalidate the Cooler & Container Ordinance's ban on coolers exceeding sixteen quarts in capacity.

*Id.* at 928-29. And, predicated on the Outfitter Plaintiffs' individual standing, we likewise concluded that STOP had sufficiently pled its associational standing to assert the same claims. *See id.* at 931-32.

Appellees' current live pleadings allege the same sort of particularized injury to the Outfitters Plaintiffs and Outfitter Intervenors that we held dispositive in *STOP I*—and if anything, the current pleadings are even more explicit in that regard. Regarding the Cooler & Container Ordinance, appellees allege that "[p]rior to the passage of the Cooler Ordinance, Outfitters had invested in coolers that exceed the 16 quart capacity limitation . . . for the purpose of renting them to customers," that the ordinance "subsequently banned those larger coolers from the rivers within the City's corporate limits," "restrict[ing] the use of [this] property, caus[ing] them additional expense to purchase 'regulation size' coolers to rent, and destroyed the market for larger cooler rentals within the City limits." The City no longer disputes the standing of the *STOP I* Appellees to challenge this ordinance, and these allegations are plainly sufficient, under *STOP I*, to likewise establish the Outfitter Intervenors' particularized injury and standing to assert the same claims. And in light of that conclusion, appellees' allegations relating to TABCC's associational standing, which parallel those concerning STOP, are plainly sufficient to establish TABCC's associational standing, predicated on the Outfitter Intervenors' individual standing, to assert its claims challenging the Cooler & Container Ordinance. *See id*. at 931-32.

The same is true of appellees' allegations of injury from the Disposable Container Ordinance. Both sets of Outfitters allege that they have retail businesses located on or near the Comal and Guadalupe rivers that heretofore sold to river-bound customers large quantities of food and beverage products in what the Disposable Container Ordinance now defines as "disposable containers," that the ordinance has restricted their use of this property and rendered it unsaleable by barring the use or consumption of the products on the rivers, and has further restricted their market not only for such food and beverage products, but also cooler rentals. Similarly, Tri-City alleged that it is a wholesaler of products in "disposable containers" whose ability to sell to retailers, including the Outfitters, had been damaged by the Disposable Container Ordinance. In further support, Appellees alleged and presented evidence—again, uncontroverted by the City—that the Outfitters and Tri-City have incurred lost revenues and other economic harm directly attributable to the ordinance's restrictions. Under *STOP I*, these allegations and proof establish that the Outfitters and Tri-City incurred the requisite particularized injury from the Disposable Container Ordinances. *See id.* at 928-29. It follows that STOP and TABCC have associational standing to challenge the Disposable Container Ordinance as well. *See id.* at 931-32.

The City presented no principled basis for the district court to conclude otherwise. While professing to the district court that each "plea to the Court's jurisdiction is presented so that time and expense to the taxpayers, litigants and the Court can be saved," the City's current pleas conspicuously did not address or even mention our Court's controlling authority in *STOP I*, but were in large part merely duplicated and revised from the same City plea to the jurisdiction that had preceded that ruling. At the hearing on their current pleas, the City relied on misplaced arguments

13

that implicated the merits of appellees' claims but not the standing of these appellees to assert them, *see Bland Indep. Sch. Dist.*, 34 S.W.3d at 554 (cautioning that courts should resolve pleas to the jurisdiction without delving unnecessarily into the merits of the claims asserted),[10] and sought to distinguish *STOP I* on the basis that the Outfitters' "primary" business was to rent tubes rather than selling "disposable containers," a fact that was obviously also true of the Outfitters Plaintiffs who rented "coolers" in *STOP I*. Bringing these jurisdictional challenges forward on appeal has, similarly, served to accomplish little more than to invoke the automatic statutory stay and further delay these appellees' efforts to have their day in court. Concluding that their pleadings and evidence plainly establish these appellees' standing under *STOP I*, we affirm the district court's order denying the City's pleas as to *STOP I* Appellees, the Outfitter Intervenors, Tri-City, and TABCC.

This leaves only the City's challenge to Stone Randall Williams's standing to assert his claims challenging the Disposable Container Ordinance. To establish his standing to prosecute those claims, Williams relies on both asserted particularized injury from the ordinance and taxpayer standing. To demonstrate particularized injury, Williams relies on pleadings and affidavit testimony to the effect that his ability to use and enjoy the Comal and Guadalupe, and to transport disposable containers on them, are impeded by the Disposable Container Ordinance. This is an injury indistinguishable from that incurred by the general public, and cannot establish Williams's

---

[10] While jurisdictional issues may overlap the merits in some circumstances, and thus require consideration of the merits to the extent necessary to resolve the jurisdictional issues, that is not the case with the standing issues presented here. *Cf. Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envt'l Quality*, 307 S.W.3d 505, 516 n.8 (Tex. App.—Austin 2010, no pet.) (quoting *Hendee v. Dewhurst*, 228 S.W.3d 354, 368-69 (Tex. App.—Austin 2007, pet. denied)).

14

particularized injury. *See Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 878-80 (Tex. App.—Austin 2010, pet. denied).

Williams also relies on pleadings and proof that he is in jeopardy of being cited for violating the Disposable Container Ordinance and that he, in fact, has already been cited. Williams advanced a similar argument in *STOP I* with regard to the Cooler & Container Ordinance. *See STOP I*, 306 S.W.3d at 931. Relying on *State v. Morales*, 869 S.W.2d 941, 945, 947 (Tex. 1994), we held that Williams had failed to invoke the district court's subject-matter jurisdiction because he had not alleged or proven irreparable injury to any vested property right from the enforcement of the ordinance's criminal penalties. *See STOP I*, 306 S.W.3d at 931 (observing that "Williams has no vested property right in carrying a cooler of a particular size into the Comal River or committing any of the other acts prohibited by the ordinance."). The same jurisdictional flaw is present here—Williams possesses no vested property right in transporting a "disposable container" into the rivers.

Consequently, Williams must rely solely upon his assertion of taxpayer standing. The Outfitters and Tri-City also asserted taxpayer standing as an alternative basis for standing in the event they were held to lack the requisite particularized injury for individual standing. As we observed in *STOP I*, principles of taxpayer standing represent "a narrow exception to the standing requirement that a plaintiff show a particularized injury distinct from that suffered by the general public to challenge a governmental action . . . ." *Id.* at 930. These principles hold that a plaintiff unable to show a distinct injury from governmental action may nonetheless have standing to sue the governmental entity to prospectively restrain the illegal expenditure of public funds under

15

certain circumstances where the plaintiff is deemed to have a sufficient interest in the entity's use of the funds by virtue of paying taxes to that entity. *See Andrade v. Venable*, 372 S.W.3d 134, 138 (Tex. 2012) (per curiam); *Williams v. Lara*, 52 S.W.2d 171, 179-83 (Tex. 2001); *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555-58. In the case of suits against municipalities like the City, the plaintiff has the burden of pleading or proving that (1) he pays certain types of taxes to the municipality, and (2) the City is "actually expending" public funds on an activity alleged to be illegal. *See Williams*, 52 S.W.2d at 179-82.

In *STOP I*, Williams similarly attempted to rely on taxpayer standing, as did other plaintiffs there. *See STOP I*, 306 S.W.3d at 930. We held the exception to be unavailable because the plaintiffs had not sought the type of claim for relief that a plaintiff may potentially have standing to pursue by virtue of taxpayer status—a claim seeking an injunction or declaration to prospectively restrain an expenditure of public funds. *See id*. We thus did not address whether the plaintiffs had satisfied the two-pronged requirement for taxpayer standing to pursue such a claim. *See id*. That defect is absent in the current live pleadings: appellees have explicitly prayed for declaratory and injunctive relief to restrain the City from "illegally expending taxpayer funds to exert its police powers to enforce city ordinances that violate the Constitution of the State of Texas." Read in conjunction with their other allegations, appellees complain that the City's efforts to enforce the Disposable Container Ordinance (e.g., arresting people floating the Comal or Guadalupe in possession of prohibited "disposable containers") exceeds the permissible scope of its municipal regulatory powers under the Texas Constitution, and they seek to restrain the City from further expending its taxpayers' dollars to that end.

16

Williams, as well as other appellees, have pled and presented evidence that they pay property taxes to the City, and the City concedes that they have satisfied the first prong of the requirements for taxpayer standing. *See Williams*, 52 S.W.2d at 179-80. However, the City disputes that any of the appellees have met the second prong by complaining of City expenditures of public funds that are illegal or are made for an illegal activity. The City characterizes appellees' claims as complaining only that the Disposable Container *Ordinance* is illegal, which it views as distinct from whether its *actions to implement and enforce the ordinance* are alleged to be illegal. Its implementation or enforcement of the ordinance, the City insists, is not *in itself* illegal in the sense required for taxpayer standing. In support of that notion, the City emphasizes that municipal ordinances are presumed valid[11]—an argument that seems to conflate the merits of appellees' claims with the preliminary and distinct question of their standing[12]—and posits a hypothetical illustration of a City contract to purchase goods or services from a nation on which the federal government has imposed a trade embargo. While the expenditures made in performing the contract itself would be illegal and a potential basis for taxpayer standing, the City reasons, "mandatory acts" incident to the contract's execution and performance, like "[p]ublication of the text of the contract for public notice, printing documents, [and] causing the contract to be drafted" would not be.

The second prong of the taxpayer-standing test, again, requires pleadings or proof (A) that the City is "actually expending" public funds (B) on an allegedly illegal activity. *See Williams*, 52 S.W.2d at 179-82. To supply the "allegedly illegal activity" component, appellees have

---

[11]   *See* Tex. Loc. Gov't Code Ann. § 51.003(a) (West 2008).

[12]   *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

17

pled that the City's actions in citing people for possessing prohibited "disposable containers" in the Comal or Guadalupe and other activities enforcing the Disposable Container Ordinance exceed the proper scope of the City's municipal regulatory powers under the Texas Constitution vis a vis state power over navigable rivers, alcoholic beverages, solid waste, etc., and are, therefore, illegal. The distinction the City proposes between the alleged illegality of such activities and the alleged illegality of the ordinance these activities seek to enforce is elusive, at least as applied to the record here, and it would seem to imply dubiously that taxpayer standing can turn solely on whether or not the complained-of governmental activities are under color of "implementing" or "enforcing" a statute or ordinance. More importantly, the proposed distinction does not find support in the Texas Supreme Court's precedents. For example, in its recent *Andrade v. Venable* decision, the supreme court analyzed whether a plaintiff had standing as a Dallas County taxpayer to sue to enjoin the county from using public funds to print election ballots in a manner required by the election code but that the plaintiff alleged violated the Texas Constitution. 372 S.W.3d at 135-36. Although ultimately concluding that the plaintiff had failed to satisfy the second prong of the taxpayer standing requirements, nothing in the supreme court's analysis ascribes any relevance to the fact that the complained-of actions could be said to be mandatory or ministerial steps to implement or enforce a statutory command. *See id*. at 136-40.

Beyond the distinction it proposes, the City urges that if we find taxpayer standing here, we would allow an unprecedented expansion of the exception that would effectively permit any municipal property taxpayer to sue to challenge any of that city's ordinances. These sorts of concerns have been addressed by a different doctrinal limitation within the second prong of

18

the taxpayer-standing test—namely, the requirement that the City be "actually expending" public funds on the allegedly illegal activity. *See id*.[13] To show that a governmental entity is "actually expending" public funds on an allegedly illegal activity, it is not enough to show merely that the entity's employees perform or are involved in the complained-of activity—because "'[n]early all governmental activities are conducted or overseen by employees whose salaries are funded by tax dollars . . . [t]o confer taxpayer standing on such a basis would allow any municipal taxpayer to challenge virtually any governmental action at any time." *See id*. at 139 (quoting *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 74 (2d Cir. 2001)). Instead, a plaintiff must have pleadings or proof:

> that the government is *actually* spending money on the allegedly illegal activity—not on a related legal activity. *See* [*Williams*, 52 S.W.3d] at 182-83. This must be a measurable, added expenditure—not one that would have been made in spite of the allegedly illegal activity. *See id.* at 182. The plaintiff must be able to allege that the challenged activity "is supported by any separate tax or paid for from any particular appropriation or that it adds any sum whatever to the cost of conducting the [challenged activity]." *Doremus v. Board of Educ. of the Borough of Hawthorne*, 342 U.S. 429, 433 (1952). Moreover, the expenditure cannot be de minimis—it must be significant. *Cf. id.* at 434 (explaining the Court's finding of a justiciable controversy in a case that "showed a measurable appropriation or disbursement of school-district funds occasioned solely by the activities complained of"); *Williams*, 52 S.W.3d at 183 (noting that county-paid employees "spent a significant amount" of time operating the challenged program). Unless a plaintiff can meet these requirements, there has not been a pecuniary injury to the taxpayers generally and the taxpayer's interest is not direct enough for his suit to proceed.

*Id.* at 138. Thus, in *Andrade*, the Texas Supreme Court held that the plaintiff had failed to show Dallas County was "actually expending" public funds on the allegedly illegal manner of ballot-

---

[13] Even if not raised by the City, we must consider the "actually expending" limitation sua sponte. *See Texas Ass'n of Bus.*, 852 S.W.2d at 445-46.

printing where he had alleged that county employees printed the ballots in the complained-of manner and that Dallas County spent money on conducting elections and printing ballots, but had not alleged any additional or incremental increase in expenditures specifically attributable to the allegedly illegal manner of their printing, much less a "significant" increase. *See id*. at 138-39. By contrast, in its earlier *Williams* decision, the supreme court held that the "actually expending" requirement was met in a suit by county taxpayers challenging, on constitutional grounds, the operation of a "Chaplain's Education Unit" (CEU) within a county jail facility. *See Williams*, 52 S.W.3d at 176-83. While holding that proof that county funds were used to feed, clothe, and house the inmates was insufficient to demonstrate the county was "actually expending" funds on the allegedly unconstitutional activity because such expenses would be incurred by the county regardless, *see id*. at 181-82, the supreme court held that the burden was met by proof that the sheriff and jail chaplain, both salaried county employees, had devoted "significant" county time specifically to overseeing, managing, or operating the CEU. *See id*. at 182-83. The activities on county time that the court deemed "significant" included "select[ing] the CEU curriculum, supervis[ing] the weekday volunteers, select[ing] the volunteer chaplains, monitor[ing] the chaplains' hours and direct[ing] their activities, determin[ing] the requirements for inmate participation, me[eting] weekly to discuss the unit's affairs, and review[ing] all information pertaining to the CEU." *Id.* at 183.

In an evident attempt to satisfy the "actually expending" requirement as applied in *Williams* and later *Andrade*, appellees pled the following:

> Public funds are being used to manage, develop, and enforce the Cooler Ordinance
> and Disposable Container Ordinance, both of which are unconstitutional activities.
> Significant time and expense is spent on law enforcement on the rivers with[in] the

20

> City limits to issue citations for violations of these Ordinances, and a significant percentage of the salaries of some City employees charged with managing and developing rules, promotions, and education is related to these illegal Ordinances.

Without more, we cannot conclude that appellees have alleged that the City is "actually expending" public funds on enforcing the ordinances in the manner contemplated by *Andrade* and *Williams*. Appellees have not alleged any facts to demonstrate that the City's use of law enforcement or other personnel time in relation to these ordinances is "a measurable, added expenditure" that it would not otherwise be making anyway on some other municipal function, nor any facts from which we could conclude such additional expenditures were "significant" in the sense that is material to the "actually-expending" requirement. *Cf. Andrade*, 372 S.W.3d at 138-39; *Williams*, 52 S.W.3d at 182-83. To the extent appellees intended its references to "significant" employee time and expense as shorthand for these concepts, their allegations amount to bare legal conclusions that would not suffice to invoke the district court's jurisdiction. *See Creedmoor-Maha*, 307 S.W.3d at 516 & n.7 (pleader has "the initial burden of alleging *facts* that affirmatively demonstrate the district court's jurisdiction," and mere legal conclusions do not suffice (citing *Miranda*, 133 S.W.3d at 226)).

Nor does appellees' evidence supply these omitted facts. Although appellees, including Williams, presented affidavits that in part alluded to the "actually expending" requirement, their testimony merely tracked the above-quoted allegations in their pleadings. Those inadequate factual allegations are not made sufficient merely by appellees' act of swearing to them. *See Andrade*, 372 S.W.3d at 138-39; *Williams*, 52 S.W.3d at 182-83; *see also City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (observing that unsupported legal conclusions are not

competent evidence).  However, a much closer question is raised by the printout of a slide show that appellees presented below, at least with respect to the Disposable Container Ordinance.

The first page of the slide show bears the title, "Sustainable Tourism and Environmental Stewardship Plan," with the subtitle, "City Council Workshop Presentation" and date, "February 15, 2012."  The next two pages are each titled, "Disposable Containers" and refer to various public education and law enforcement initiatives by "NBPD," an abbreviation that corresponds to "New Braunfels Police Department."  The next three pages are the most critical. These are each titled "Summary of Recommendations and Fiscal Impact," and recite line-item figures that include:

Current River Fund Expenditures

| | |
|---|---|
| River Fund—Police | $618,000 |
| River Fund—River Activities | 271,500 |
| Litter Contract | 160,000 |
| Total | $1,049,500 |

Disposable Container Enforcement Expenditures

| | |
|---|---|
| Additional Rangers for enforcement | $302,000 |
| Enforcement Plan—Police | 62,000 |
| Communication equipment | 36,000 |
| Total | $400,000 |

Other line items appear to allocate the $400,000 in "disposable container enforcement expenditures" between $24,000 in "one-time expenses" and $376,000 in "recurring expenses."

Appellees represent that this is a "City document" and suggest that it is tantamount to admissions that the City is presently expending large additional sums, above and beyond

22

expenditures it otherwise would make, specifically to enforce the Disposable Container Ordinance. We can agree that evidence of such expenditures specifically dedicated to activities that are alleged to be illegal would seem to satisfy the requirement of "measurable, added," and "significant" expenses as contemplated by *Andrade* and *Williams*. However, we can find no evidence in the record from which one could conclude that the slide show was, in fact, prepared by City personnel. More importantly, there is no evidence in the record that the slide show authoritatively represents, or purports to represent, sums that the City is actually spending currently on these activities, as opposed to some sort of proposed or preliminary figures. Barring such further proof regarding the nature or origins of the slide show printout, we cannot agree that it is evidence that the City is "actually expending" sums on enforcing the Disposable Container Ordinance.

Accordingly, we must hold that appellees have failed to present pleadings or proof that would establish their standing as taxpayers to challenge the Disposable Container Ordinance. Although the other appellees have established independent, alternative bases for standing to assert their claims, Williams has not. Consequently, the district court erred in denying the City's plea to the jurisdiction as to him.

However, as suggested by the foregoing analysis—and the existence of the slide show printout, to the extent it might be shown to reflect actual City expenditures—the defect in Williams's pleadings as to taxpayer standing stems from omitted facts as opposed to some sort of incurable jurisdictional defect, and could be cured by repleading. Accordingly, Williams is entitled to a reasonable opportunity to amend and replead. *See Miranda*, 133 S.W.3d at 226-27.

23

## CONCLUSION

We reverse the district court's order denying the City's plea to the jurisdiction as to Stone Randall Williams, but remand his claims so the district court may afford him a reasonable opportunity to amend his pleadings. We otherwise affirm the district court's order.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Field

Affirmed in part; Reversed and Remanded in part

Filed: February 21, 2013