# Supreme Court of Texas

No. 20-0382

Elizabeth C. Perez,

*Petitioner,*

v.

Sylvester Turner, Mayor, Karun Sreerama, Director of Public
Works and Engineering, and the City of Houston,

*Respondents*

On Petition for Review from the
Court of Appeals for the First District of Texas

**Argued March 22, 2022**

JUSTICE BLACKLOCK delivered the opinion of the Court.

Plaintiff Elizabeth Perez filed this case in 2015 challenging the City of Houston's assessment, collection, and expenditure of a "drainage fee." Perez alleged that the ordinance authorizing the drainage fee was invalid because the ordinance was premised on a faulty amendment to the city charter. She sought a variety of relief for herself and a class of similarly situated taxpayers, including a declaration of the drainage fee

ordinance's invalidity, an injunction against the City's collection of drainage fees, and reimbursement of drainage fees already paid.

The nature of this case changed dramatically in November 2018, while the case was on appeal. The City passed a new charter amendment curing many of the defects Perez alleged in the drainage fee ordinance. Although the parties' briefing is less than clear about the effect on this case of the 2018 charter amendment, Perez conceded at oral argument that the passage of the new charter amendment significantly truncated her original claims. As we construe what remains of this case after the November 2018 amendment, Perez has two ongoing claims—one for reimbursement of the drainage fees she paid prior to 2018, and one for a narrow prospective injunction against the future expenditure of fees collected prior to 2018. As explained below, we affirm the lower courts' dismissal of these claims, but we remand the case to the district court to allow Perez to replead in light of intervening events.

## I.

In November 2010, voters in the City of Houston approved "Proposition One," which amended the City's Charter to allow the City to create a "Pay-As-You-Go" Dedicated Drainage and Street Renewal (DDSR) Fund to pay for drainage projects. *See Dacus v. Parker*, 466 S.W.3d 820, 822 (Tex. 2015). The 2010 amendment (Charter Amendment) included multiple funding sources for the DDSR Fund— drainage fees assessed on real property, a fixed percentage of property-tax revenue shifted from debt service to the Fund, federal

2

grants, and developer "impact fee" revenue. Perez and two other voters filed an election contest challenging Proposition One's adoption. *See id.*

With the election contest pending, the City moved forward as planned, enacting the Drainage Fee Ordinance (DFO) in April 2011. The DFO created a new public utility, the Houston Drainage Utility System. DFO § 47-803. The DFO required the City to (1) establish drainage fees "against all real property in the city subject to such charges" and (2) "provide drainage[1] for all real property in the city on payment of drainage charges unless the property is exempt." *Id.* § 47-801. The DFO based the amount of drainage fees on the benefited property's type and square footage. Failure to pay drainage fees could result in various penalties, including disruption of utility service and late fees. *Id.* § 47-842.

Beginning in July 2011, the City collected drainage fees from Perez and other property owners. Perez paid $11.38 per month in drainage fees for her primary residence and $3.38 per month for additional property she owned for a time. This fee was added to her utility bill. Perez failed to pay her bill a few times, which resulted in a

---

[1] The DFO defines "drainage" as:

> streets, curbs, bridges, catch basins, channels, conduits, creeks, culverts, detention ponds, ditches, draws, flumes, pipes, pumps, sloughs, treatment works, and appurtenances to those items, whether natural or artificial, or using force or gravity, that are used to draw off surface water from land, carry the water away, collect, store, or treat the water, or divert the water into natural or artificial watercourses; drainage shall also mean the water so transported.

DFO § 47-802, Definitions.

3

$1.13 drainage-fee penalty in addition to a separate penalty for non-payment of other parts of the utility bill.

In 2015, we held in *Dacus*—the election contest challenging the Charter Amendment—that Proposition One's ballot language misleadingly described the Charter Amendment, rendering the Amendment invalid. We remanded that case to the district court for further proceedings. *Dacus*, 466 S.W.3d at 828–29.

On June 17, 2015, a few days after our decision in *Dacus*, Perez filed this lawsuit. Perez sought a declaration of the DFO's invalidity, a prospective injunction, and reimbursement of fees previously collected. She also sought to represent a class of similarly situated taxpayers. Perez's amended petition alleges that the DFO charge, like the Charter Amendment, is void given this Court's decision in *Dacus*. Perez further alleged that City Officials were acting *ultra vires* by using drainage fees to pay for projects unrelated to drainage and by excluding the fees from the City's revenue and spending caps, which they lacked authority to do without the recently invalidated Charter Amendment. Perez alleged related state and federal constitutional claims and a claim under 42 U.S.C. § 1983.

The City filed a combined plea to the jurisdiction and motion for summary judgment. After a hearing, the district court granted the plea to the jurisdiction on all claims. The court held that Perez's constitutional claims premised on the Charter Amendment's invalidity were not ripe because *Dacus* was still pending when she filed her suit; that Perez lacked standing to challenge the collection of drainage fees under the Charter Amendment or the DFO because she had no

4

particularized injury; that she lacked standing to seek reimbursement of her drainage fees; and that her *ultra vires* claims were insufficiently pleaded and therefore barred by governmental immunity.

Perez appealed. The court of appeals affirmed. 629 S.W.3d 270 (Tex. App.—Houston [1st Dist.] 2019). The court of appeals held that Perez's claims based on the Charter Amendment's invalidity were not ripe. *Id.* at 279–80. It further held that Perez had neither pleaded an injury particular to her nor properly invoked taxpayer standing. *Id.* at 282–83. Having concluded Perez lacked standing, the court of appeals affirmed the district court's judgment without considering the other issues presented by Perez's appeal. *Id.* at 284. Perez petitioned for review in this Court, and we granted the petition.

## II.

In 2018, while Perez's appeal was pending, the voters of Houston approved a new charter amendment that lacks the infirmity identified in *Dacus*. As a result, much of the case Perez originally pleaded has been overtaken by events. Taking this development into account, we construe Perez's briefing in this Court to preserve two remaining theories of liability: (1) a claim for reimbursement of the allegedly illegal drainage fees paid between 2011 and 2018, *see Dall. Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 877 (Tex. 2005); and (2) an *ultra vires* claim for prospective injunctive relief prohibiting City Officials from spending any drainage fees collected between 2011 and 2018 that may remain in the City's accounts.[2]

---

[2] The City argues that Perez abandoned her reimbursement claims, directing this Court to Perez's statement in her opening brief in the court of

5

The court of appeals affirmed the dismissal of all Perez's claims for lack of subject-matter jurisdiction, either on ripeness or standing grounds.[3] We begin with ripeness, an inquiry that focuses on whether a case's "facts are sufficiently developed 'so that an injury has occurred or is likely to occur, rather than being contingent or remote.'" *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000) (quoting *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)).

The court of appeals held that all Perez's claims premised on the Charter Amendment's invalidity were not ripe because no court had finally adjudged the amendment invalid at the time Perez filed her suit. *See* 629 S.W.3d at 279. Although this Court had already declared the Charter Amendment invalid in *Dacus*, we had remanded that case to the district court, so no judgment against the City was yet operative when Perez sued. *See Dacus*, 466 S.W.3d at 829. And, as the court of appeals saw it, "Any claims that the City or City officials acted

appeals that she was not seeking reimbursement for fees already spent. However, Perez made this admittedly inartful statement in the course of defending her standing to bring another claim, and examination of her entire brief in the court of appeals reveals no intention to abandon her reimbursement claim. The court of appeals seems not to have thought Perez's briefing abandoned her reimbursement claim, since its opinion addresses her standing to bring that claim rather than resolving the claim on abandonment grounds. *See* 629 S.W.3d at 281. We likewise do not read Perez's court of appeals briefing to abandon her reimbursement claim.

[3] The City argues that Perez waived her ripeness arguments as to her state and federal constitutional claims and claims under 42 U.S.C. § 1983. Whether or not she did so at some earlier stage of the case, Perez makes no attempt in this Court to revive those claims, which her briefing does not address. As stated above, the only two claims remaining are for reimbursement and for narrow prospective injunctive relief.

6

improperly in failing to recognize the invalidity of the Charter Amendment before its invalidity was judicially determined were premature at the time Perez filed this suit." 629 S.W.3d at 279.

This approach to ripeness was error. Perez did not need a final judgment in *Dacus* as a jurisdictional prerequisite to her claims premised on the Charter Amendment's invalidity. Ripeness asks primarily whether the plaintiff has alleged a past injury or a likely future injury, rather than a speculative, remote injury that may not come to pass. *See Patterson*, 971 S.W.2d at 442. A claim of an ordinance's invalidity is ripe if the ordinance is currently injuring the plaintiff, whether or not a court has already adjudged the ordinance invalid. Many of Perez's claims for relief were premised on the Charter Amendment's invalidity, but her *injury* was the assessment and payment of drainage fees. The outcome of *Dacus* changed nothing about the reality or imminence of that injury. To be sure, the outcome of *Dacus* made it far easier for Perez to succeed in demonstrating the Charter Amendment's invalidity, but *Dacus* had nothing to do with the ripeness of Perez's claims. Whether Perez demonstrated the Charter Amendment's invalidity using a final judgment in *Dacus*, this Court's opinion in *Dacus*, or her own novel arguments, the Charter Amendment's invalidity was an *element of her claims*—not a jurisdictional prerequisite that had to be established before she sued.[4]

---

[4] Whether a court has already declared an action of the government invalid may control the merits of a similar claim in another court, as a matter of res judicata, for instance. It may even be a required element of the claim—for example, if the claim required the plaintiff to show a violation of "clearly established law." But the outcome of ancillary litigation has nothing to do with

The court of appeals also held that Perez lacks standing to bring her claims. *See* 629 S.W.3d at 281–84. Before delving into the standing question, we must distinguish between Perez's obligation to establish standing and her obligation to overcome governmental immunity, separate matters that the parties to some extent conflate. Although both requirements implicate the courts' jurisdiction, they are distinct requirements that demand distinct showings. The City defends the court of appeals' decision that Perez lacks *standing*. It does so on two grounds—(1) that she has not alleged a particularized injury, and (2) that her pleadings do not establish the drainage fee's invalidity. The first point is a matter of standing. The second is not. As explained below, the City is correct that Perez's pleadings must adequately allege the drainage fee's invalidity, but any failure to do so means the City retains governmental immunity, not that Perez lacks standing.

Generally, to establish standing, a plaintiff must plead a particularized, concrete injury, distinct from that of the public, which courts have the power to redress. *Heckman v. Williamson County*, 369 S.W.3d 137, 154–55 (Tex. 2012). We generally apply a test like the federal test for standing:

> First, the plaintiff must have suffered an "injury in fact"— an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be

whether a plaintiff has a ripe claim that the government's unlawful action is causing her injury. There may be other bars to a plaintiff's attempt to reach back in time to impose consequences on the City for past actions the City did not know would be declared illegal, but ripeness is not among them.

"fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

As we recently explained, "a plaintiff does not lack standing simply because some other legal principle may prevent it from prevailing on the merits; rather, a plaintiff lacks standing if its 'claim of injury is too slight for a court to afford redress.'" *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021) (quoting *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008)). The threshold standing inquiry "in no way depends on the merits of the [plaintiff's] contention that particular conduct is illegal." *Id.* (quoting *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 7 (Tex. 2011)) (internal quotation marks omitted).

Although a plaintiff's standing does not depend on the merits of his claim, a plaintiff suing the government may still be required to demonstrate his claim's potential validity at the pleading stage. Even if a plaintiff has the concrete, particularized, and redressable injury required for standing, sovereign or governmental immunity can still bar a court from hearing the case. To defeat a plea to the jurisdiction based on sovereign or governmental immunity, a plaintiff must plead facts that, if true, establish a viable claim that is not barred by immunity. *Matzen v. McLane*, __ S.W.3d __, 2021 WL 5977218, at *4 (Tex. Dec. 17, 2021) ("As we have said before, to defeat a plea to the jurisdiction, the plaintiff suing the state or its officers must plead facts that, if true, affirmatively demonstrate that sovereign immunity either does not

9

apply or has been waived.") (citations omitted); *NAACP of Austin*, 345 S.W.3d at 11 (noting that "the Secretary retains immunity from suit unless the voters have pleaded a viable claim") (citations omitted).

If the plaintiff's claim lacks merit even when taking the pleaded facts as true, the pleading has not overcome the government's immunity. *Matzen*, 2021 WL 5977218, at \*4; *NAACP of Austin*, 345 S.W.3d at 11. Thus, when the government contends that a plaintiff has not adequately pleaded a violation of law, it typically does so to rebut the plaintiff's attempt to overcome governmental immunity, not to show a lack of standing. Standing, on the other hand—which looks to matters such as injury, causation, and redressability—involves not the viability of the pleaded claim but the nature of the injury alleged.

With these initial observations in mind, we turn to Perez's remaining claims. Again, we consider two claims to remain live: (1) a claim for reimbursement of the allegedly illegal drainage fees paid between 2011 and 2018; and (2) an *ultra vires* claim for prospective injunctive relief prohibiting City Officials from spending any drainage fees collected between 2011 and 2018 that may remain in the City's accounts. We consider first whether Perez has standing to pursue these claims. We conclude that she does. We then consider whether she has adequately pleaded these claims so as to overcome the City's governmental immunity. We conclude that she has not.

## III.

## A.

We begin with the threshold jurisdictional question of standing. We first consider whether Perez has standing to bring a claim seeking

10

an injunction against the future expenditure of illegally collected drainage fees. In general, regardless of the claim asserted, "a plaintiff must show that he has suffered a particularized injury distinct from the general public." *Andrade v. Venable*, 372 S.W.3d 134, 137 (Tex. 2012) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555–56 (Tex. 2000)). However, Texas law has long recognized an exception to this particularity requirement for taxpayers seeking to "enjoin the illegal expenditure of public funds." *Bland Indep. Sch. Dist.*, 34 S.W.3d at 556. We have called such suits "drastic" and have required a plaintiff pursuing one to "bring himself strictly within the established rules." *Osborne v. Keith*, 177 S.W.2d 198, 200 (Tex. 1944).

Properly construed, taxpayer standing "provides important protection to the public from the illegal expenditure of public funds without hampering too severely the workings of the government." *Bland Indep. Sch. Dist.*, 34 S.W.3d at 556. Taxpayer standing is generally limited to plaintiffs who can show "(1) that the plaintiff is a taxpayer; and (2) that the public funds are being expended on an allegedly illegal activity." *Williams v. Lara*, 52 S.W.3d 171, 179 (Tex. 2001) (citation omitted). "A taxpayer does not have an interest direct enough to warrant standing unless the activity challenged involves an expenditure of public funds that would not otherwise be made." *Andrade*, 372 S.W.3d at 139.

In *Jones v. Turner*, we recently decided that taxpayer standing applies when the allegation is that funds have been allocated illegally toward otherwise lawful ends. __ S.W.3d __, 2022 WL 1815031, at *7 (Tex. June 3, 2022). In *Jones*, we did not require the plaintiff to allege

11

that the actions taken using the challenged funds are independently illegal. Instead, the unlawful expenditure itself provided the "illegal activity" required by our precedent. In deciding whether to afford taxpayer standing, we asked whether "[t]he rationale underlying taxpayer standing applies . . . : 'protecting the public from the illegal expenditure of public funds without hampering too severely the workings of the government.'" *Id.* at *4 (quoting *Bland Indep. Sch. Dist.*, 34 S.W.3d at 556). We have also looked to whether or not "there has . . . been a pecuniary injury to the taxpayers generally" such that "the taxpayer's interest is . . . direct enough for his suit to proceed." *Andrade*, 372 S.W.3d at 138. As explained below, we conclude that Perez's claim—which alleges that the drainage fee was altogether illegal and seeks an injunction against the expenditure of the proceeds—is the kind of claim to which "the rationale underlying taxpayer standing applies." *Jones*, 2022 WL 1815031, at *4.

To begin with, Perez alleges that she is a taxpayer, and the City does not contend otherwise. Most of Perez's claims for prospective relief have been rendered moot by the 2018 charter amendment, which cured the defects in the earlier Charter Amendment we considered in *Dacus*. But Perez contends that she retains a narrow *ultra vires* claim for prospective injunctive relief against the continued expenditure of drainage fees illegally collected between 2011 and 2018.[5]

---

[5] In *Jones*, we also recognized that taxpayer standing may be asserted by a plaintiff who brings an *ultra vires* claim, assuming taxpayer standing's requirements are met. __ S.W.3d __, 2022 WL 1815031, at *4 (Tex. June 3, 2022).

The City characterizes Perez's claim for injunctive relief against expenditure of drainage fees as a challenge to the validity of the DFO. Proceeding from this understanding of the claim, the City argues that Perez must allege a particularized injury to have standing to challenge the DFO. The City is correct that plaintiffs seeking the judicial invalidation of a city ordinance generally must allege a particularized injury. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 555–56. But taxpayer standing is an exception to the usual particularized injury requirement. A taxpayer's request for an injunction against the expenditure of an illegally collected tax may or may not require the courts to decide whether a city ordinance is valid. That alone does not tell us whether taxpayer standing applies. Instead, we look to the gravamen of the claim and to whether "[t]he rationale underlying taxpayer standing applies" to such claims. *Jones*, 2022 WL 1815031, at *4. Here, it plainly does.

Perez's claim is that the drainage fee was an altogether unlawful tax that resulted in the collection of millions of dollars that cannot be lawfully spent for any purpose. No particular taxpayer has a unique stake in such a claim, which alleges "a pecuniary injury to the taxpayers generally." *Andrade*, 372 S.W.3d at 138. Perez's claim is narrowly focused on the alleged illegality of a tax and does not seek to overturn other policies or decisions of the City that happen to involve spending money. Moreover, Perez alleges a "measurable, added expenditure" of funds that she claims should never have been collected and therefore cannot be spent; she does not challenge expenditures "that would have been made in spite of" the alleged illegality. *Id.* (citation omitted).

Instead, the alleged illegality *is* the collection and expenditure of the tax. As in *Jones v. Turner*, "we do not hold that a taxpayer has standing to challenge every use (or nonuse) of taxpayer money of which he does not approve." 2022 WL 1815031, at *4. But when the allegation is that the tax *itself* was unauthorized by law, a plaintiff who paid the tax may rely on taxpayer standing when seeking an injunction against the expenditure of the illegally collected funds.[6]

The City contends, and the court of appeals held, that Perez must demonstrate the drainage fee's illegality in order to establish her standing as a taxpayer. We disagree. The key showing required by our precedent on taxpayer standing is "that the public funds are being expended on an *allegedly* illegal activity." *Williams*, 52 S.W.3d at 179 (emphasis added). Here, there is no dispute that public funds are being expended, and Perez has alleged that the expenditure is illegal. The threshold dispute in cases like *Williams* and *Andrade* was whether the challenged activity involved the expenditure of public funds at all. We required the plaintiffs to show that measurable, significant public funds that would not otherwise have been spent were truly at stake in order to assert taxpayer standing. But we did not require the plaintiffs, as a prerequisite to standing, to demonstrate that the *allegedly* illegal activity was *actually* illegal. That merits-related inquiry is not a proper

---

[6] We make no comment on the circumstances in which the proper *remedy* for the past collection of illegal taxes is an injunction against future expenditure of the proceeds. Nor do we address whether governmental immunity might bar such a claim for one reason or another. We hold only that Perez has *standing*, as a taxpayer, to assert her claim, whether or not she could ultimately succeed.

14

part of a standing analysis—although it may come into play at the pleading stage when assessing governmental immunity, as explained below.[7] Perez has standing, as a taxpayer, to seek an injunction against expenditures of allegedly illegal drainage fees.

Perez also has standing to bring her reimbursement claim. In *Garcia v. City of Willis*, we held that a plaintiff had standing to seek reimbursement of a fine because the plaintiff was "out the money he paid to satisfy an allegedly unconstitutional fine." 593 S.W.3d 201, 208 (Tex. 2019).[8] Like Perez, the plaintiff in *Garcia* would have had to show a local ordinance's invalidity in order to succeed on his reimbursement claim. *See id.* at 209. This did not affect the standing analysis, which

---

[7] The City points to *City of Arlington v. Scalf*, 117 S.W.3d 345 (Tex. App.—Fort Worth 2003, pet. denied), in support of its argument that Perez had to show a particularized injury to bring any claim alleging the DFO's invalidity. In *Scalf*, the plaintiff challenged a city ordinance that imposed a street maintenance fee, seeking injunctive relief and reimbursement of all fees collected. *Id.* at 346. The court of appeals held that Scalf did not have standing because he failed to allege any particularized injury caused by the ordinance. *Id.* at 347–48. However, the court acknowledged the "long-standing exception" to this general rule for taxpayers seeking to enjoin illegal expenditures. *Id.* at 347 n.1. The court did not hold that taxpayer standing was unavailable in all cases challenging an ordinance's validity, as the City contends. To the contrary, the court held that Scalf could not invoke taxpayer standing because he had not even *alleged* that the expenditure of the disputed funds was illegal. Perez made such an allegation here.

[8] As in *Garcia*, Perez's reimbursement claim is alleged under *Dallas County Community College District v. Bolton*, 185 S.W.3d 868, 877 (Tex. 2005) (stating that "a person who pays government fees and taxes under duress has a valid claim for their repayment"). By holding that Perez's payment of taxes constitutes sufficient injury to confer standing to bring such a reimbursement claim, we do not comment on the requirements of reimbursement claims under *Bolton* or on whether Perez's reimbursement claim satisfies those requirements.

15

focused on the injury to the plaintiff, not whether the claim involved the validity of an ordinance.

Similarly, the plaintiff in *Garcia* did not lack *standing* just because no court had yet declared the disputed ordinance invalid. Like Perez, Garcia sought to establish the ordinance's invalidity as an element of his reimbursement claim. We did not require him to show a prior declaration of the ordinance's invalidity just to have standing. Instead, as with any other plaintiff, his standing turned on the nature of his injury, and we found his personal payment of a fine to be sufficient injury to confer standing to seek reimbursement. *See id.* at 208. In *Garcia*, and here, the merits question of the ordinance's invalidity was not a matter of standing. To the extent the court of appeals suggested that Perez lacked standing to assert a reimbursement claim because the DFO had not yet been declared invalid by another court, this was error. 629 S.W.3d at 281.

Just as in *Garcia*, Perez is out the money she paid toward the allegedly illegal fee. And the remedy she seeks—reimbursement— would redress her injury. The injury is particular to her, and though relatively small, it is sufficient to confer standing. *See also Data Foundry*, 620 S.W.3d at 696 (holding that payment of charges assessed by the government is sufficiently particularized injury to confer standing to challenge the charges). Perez therefore has standing to bring her reimbursement claim, irrespective of its merits.

We therefore reject the City's argument that Perez lacks standing to seek reimbursement unless she can show a particularized injury beyond her payment of taxes. We do not comment on other potential

16

defects in Perez's reimbursement claim, including whether she adequately pleaded the duress required by our precedent. *See Bolton*, 185 S.W.3d at 877. But, on the preliminary question of Perez's standing to bring such a claim, her reimbursement claim focuses discretely on the personal financial injury to her and seeks to redress it by getting her money back. We can discern no *standing* defect in such a straightforward claim, whether or not its success on the merits is premised on an ordinance's invalidity, and whether or not the claim may suffer from other defects we do not address.

Perez's reimbursement claim may nevertheless fail at the pleading stage for other reasons, apart from standing, which we address below. *See, e.g.*, *Garcia*, 593 S.W.3d at 208, 210 (holding that Garcia had standing to seek reimbursement of fines paid but that his claim did not survive the city's assertion of governmental immunity).

**B.**

We turn to the City's assertion of governmental immunity. At the pleading stage, "[a] plaintiff suing the [government] must plead facts that, if true, affirmatively demonstrate that [governmental] immunity either does not apply or has been waived." *Matzen*, 2021 WL 5977218, at *4 (citation omitted). This is because the government "retains immunity from suit unless the [plaintiff] has pleaded a viable claim." *NAACP of Austin*, 345 S.W.3d at 11. We therefore assess whether either of Perez's two remaining claims, as we understand them, is viable as pleaded.[9]

---

[9] The City argues that Perez waived her *ultra vires* claim by failing to brief it adequately in the court of appeals and here. However, her opening brief

17

Both Perez's reimbursement claim and her claim for injunctive relief are premised on the City's alleged lack of authority to assess the drainage fees.[10] As Perez sees it, in the absence of the Charter Amendment, the City Officials lacked authority to enact the DFO and therefore lacked authority to charge the fees. The City disagrees, arguing that it had home-rule authority apart from the Charter Amendment to enact drainage ordinances and assess drainage fees. The City is correct.

Houston is a home-rule city governed by a city charter. Home-rule cities have "all the powers of the state not inconsistent with

---

in the court of appeals includes numerous references to her *ultra vires* claims. While her discussion of them is scant in her briefing before this Court, it is sufficient to preserve the claim. *See Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 849 (Tex. 2018) (stating even where "issue[s] w[ere] presented only briefly," including as a single sentence "in a footnote," they were nonetheless held to be "properly before [the Court]").

[10] Although we address governmental immunity's application to these two claims together, we note that the two claims employ two different theories to defeat the City's assertion of immunity. The reimbursement claim seeks to proceed based on this Court's recognition of "a narrow exception to immunity" for taxpayer claims for reimbursement of taxes or fees paid under duress. *Garcia v. City of Willis*, 593 S.W.3d 201, 209 (Tex. 2019) (citing *Bolton*, 185 S.W.3d at 876). By contrast, Perez's claim for prospective injunctive relief seeks to invoke the *ultra vires* exception to immunity. *See Matzen v. McLane*, __ S.W.3d __, 2021 WL 5977218, at *4 (Tex. 2021) ("Plaintiffs who seek to bypass sovereign immunity using an ultra vires claim must plead, and ultimately prove, that the defendant government official 'acted without legal authority or failed to perform a ministerial act.'") (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)). Under either theory, the government retains immunity "unless the [plaintiff] has pleaded a viable claim." *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011). Because we conclude that both claims are not viable for the same reason, we can dispose of them together, and we need not further explore governmental immunity's application to them.

the Constitution, the general laws, or the city's charter." *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998); *see* TEX. CONST. art. XI, § 5(a). Perez cites no authority for the proposition that the City of Houston's background, home-rule authority does not include the power to address the city's well-known drainage challenges and to assess taxes or fees for that purpose. In other words, we do not understand Perez to argue that the City cannot act with respect to drainage unless a state statute specifically authorizes it to do so. Instead, Perez contends that the City's DFO impermissibly conflicts with a state statute called the "Municipal Drainage Utility Systems Act" (MDUSA). The Legislature, of course, may limit "the broad powers granted to home rule cities," although we have required such limitations to be stated with "unmistakable clarity." *City of Sweetwater v. Geron*, 380 S.W.2d 550, 552 (Tex. 1964). Perez's contention is that MDUSA has the effect of withdrawing from the City any home-rule authority the City would have had to enact the DFO and assess the drainage fee. *See* TEX. LOC. GOV'T CODE §§ 552.041–.054. We disagree.

Perez contends that the DFO's broad definition of "drainage" impermissibly authorizes the City to exceed the scope of the drainage expenditures contemplated by MDUSA.[11] But this attempt to use

---

[11] In MDUSA, "'Drainage' means bridges, catch basins, channels, conduits, creeks, culverts, detention ponds, ditches, draws, flumes, pipes, pumps, sloughs, treatment works, and appurtenances to those items, whether natural or artificial, or using force or gravity, that are used to draw off surface water from land, carry the water away, collect, store, or treat the water, or divert the water into natural or artificial watercourses." TEX. LOC. GOV'T CODE § 552.044(3). In the DFO, "drainage" also includes "streets" and "curbs . . . that are used to . . . divert [surface] water into natural or artificial watercourses." DFO § 47-802, *Drainage*.

19

MDUSA to limit the City's home-rule authority never gets out of the starting gates. We need not parse the various provisions of MDUSA and compare them to the DFO to know whether MDUSA constrains the City's authority with the unmistakable clarity our precedent requires. Instead, MDUSA tells us—with unmistakable clarity—exactly what its effect on the authority of home-rule cities is: None. MDUSA plainly states that it does not "enhance or diminish the authority of a home-rule municipality to establish a drainage utility" under its home-rule powers or "preclude a municipality from imposing impact fees or other charges for drainage authorized by law." *Id.* § 552.054; *see also Beck Steel, Inc. v. City of Lubbock*, No. 14-19-00060-CV, 2020 WL 4461277, at *5 (Tex. App.—Houston [14th Dist.] Aug. 4, 2020, no pet.) (holding that home-rule cities' drainage ordinances may add to MDUSA's terms).

MDUSA could hardly state its non-preemptive effect any more clearly. Perez cannot allege a valid reimbursement claim or a valid *ultra vires* claim to the extent these claims are premised on her contention that the drainage fee's illegality stems from a conflict with MDUSA.

Even so, while the City had home-rule authority to enact the drainage ordinance without the Charter Amendment, it did not have authority to exceed its charter's revenue or spending caps without the Charter Amendment. If collection or expenditure of the fee in a given year between 2011 and 2018 caused the City to exceed its revenue or spending caps, then Perez conceivably could establish the fee's illegality irrespective of MDUSA.

However, Perez does not argue this theory of the drainage fee's invalidity to this Court. She focuses entirely on the alleged conflict with

20

MDUSA, which is immaterial given MDUSA's explicit disclaimer against preemption. We will not reverse the dismissal of Perez's claims under a legal theory not advanced in this Court. Both of Perez's remaining claims required her to articulate a viable theory of the DFO's illegality in order to overcome the City's governmental immunity. Because the only theory she has advanced in this Court fails as a matter of law, we affirm the dismissal of her claims.[12]

## IV.

The court of appeals erred by dismissing some of Perez's claims as unripe and by dismissing others for lack of standing. 629 S.W.3d at 279, 284. Nevertheless, we affirm the dismissal of Perez's claims because we agree with the court of appeals that Perez has advanced no viable theory under which the disputed drainage fee exceeded the City's authority.

Several years have passed since Perez's most recent amended pleading in 2016. Given the passage of time and the intervening events bearing significantly on Perez's original claims, we conclude she should have the opportunity to replead on remand. *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 623 (Tex. 2011). Although dismissal of all her claims was not erroneous, we cannot say that "[t]he allegations found in the pleadings . . . affirmatively . . . negate the court's jurisdiction." *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009). As a result, "the plaintiff should be given an opportunity to amend the pleadings." *Id.*

---

[12] Because we conclude dismissal of Perez's remaining claims was proper on this basis, we need not address the City's many other objections to Perez's claims.

21

The court of appeals' judgment of dismissal is affirmed, but that judgment is reversed in part to the extent it denied Perez the opportunity to replead.

James D. Blacklock
Justice

**OPINION DELIVERED:** June 10, 2022