

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| PHILIP ALAN GREEN and JONATHAN ZACKHERY WILKS, | § | No. 08-23-00086-CV |
| Appellants, | § | Appeal from |
| v. | § | 42nd Judicial District Court |
| TEXAS COMPTROLLER OF PUBLIC ACCOUNTS and GLENN HEGAR, in his Official Capacity, | § | of Callahan County, Texas |
| | § | (TC# 22326) |
| Appellees. | § | |

**O P I N I O N**

Philip Alan Green and Jonathan Zachkery Wilks (the Landowners) sued Texas's Comptroller of Public Accounts, Glenn Hegar, in his official capacity, as well as his office, the Texas Comptroller of Public Accounts (collectively, the Comptroller) after the Comptroller issued a certificate of limitation on appraised value following its review of an application under Chapter 313 of the Texas Tax Code. The trial court granted the Comptroller's plea to the jurisdiction, and the Landowners appealed. Because we conclude the Landowners do not have standing to sue, we affirm.[1]

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Eleventh Court of Appeals to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3.

BACKGROUND

**A. Statutory background**

In 2001, the Legislature enacted Chapter 313 of the Tax Code, known as the Texas Economic Development Act—a statute that "allows school districts to offer property-tax incentives to businesses willing to make eligible investments within the districts' boundaries." *In re Stetson Renewables Holdings, LLC*, 658 S.W.3d 292, 293–94 (Tex. 2022). Through Chapter 313, school districts may offer businesses a ten-year limitation on their appraised property value for ad valorem tax purposes.[2] TEX. TAX CODE ANN. §§ 313.025(a), .027(a-1). The intent of the legislation is to ensure that "economic development decisions involving school district taxes . . . occur at the local level with oversight by the state" and are "consistent with identifiable statewide economic development goals[.]" *Id.* § 313.004(1). To that end, only businesses in certain industries are eligible for the incentive, including businesses in renewable energy generation. *Id.* § 313.024(b).

Applying for an appraised-value limitation involves a complicated multi-step process. *In re Stetson Renewables*, 658 S.W.3d at 294 n.3. It begins with the business's application to the school board, in which it must demonstrate certain statutory requirements and pay a fee. TEX. TAX CODE ANN. §§ 313.025(a), .021(2). As relevant here, the applicant must demonstrate that the proposed property is "located in an area designated as a reinvestment zone," and it plans to "make a qualified investment" and "create at least 25 qualifying new jobs."[3] *Id.* § 313.021(2)(A).

Though these tax-limitation agreements are between a business and the school district, the Comptroller's office plays an important "gatekeeper" function. *In re Stetson Renewables*, 658 S.W.3d at 294 n.3. If the school board decides to consider an application, it delivers a copy to the

---

[2] This incentive program expired at the end of 2022. TEX. TAX CODE ANN. § 313.007.

[3] In certain situations, the school board may waive the job-creation requirement. *Id.* § 313.025(f-1).

Comptroller to complete the economic impact evaluation. TEX. TAX CODE ANN. §§ 313.025(b), .026. The Comptroller must determine, among other things, whether a proposed project is reasonably likely to generate enough tax revenue within twenty-five years to offset the tax losses due to the limitation agreement, and whether securing an appraised-value limitation is a determining factor in the applicant's decision to invest in the project. *Id.* § 313.026(c). Based on this evaluation, the Comptroller decides whether to issue a certificate for a limitation on appraised value. *Id.* § 313.026. Even if a project does not meet those requirements, the Comptroller may still issue the certificate if he makes a "qualitative determination that other considerations associated with the project result in a net positive benefit to the state[.]" *Id.* § 313.026(f).

If the Comptroller declines to issue a certificate, the school board cannot grant the application for appraised-value limitation. *Id.* § 313.025(i). However, if the Comptroller does issue a certificate, the school board then submits any negotiated agreement with the applicant for the Comptroller's approval. *Id.* § 313.027(f). If the Comptroller approves that agreement, the school board is the entity to vote on whether to approve the application and grant the appraised-value limitation. 34 TEX. ADMIN. CODE § 9.1054(f) (2016) (Comptroller of Pub. Accts., Limitation on Appraised Value on Certain Qualified Properties). Only if the school board votes to approve the application does it issue written findings and execute the agreement. *Id.* § 9.1054(f).

## B. This litigation

Century Oak Wind Project, LLC submitted its Chapter 313 proposal to construct a 150-megawatt wind farm (the Project) in Callahan County to Baird Independent School District. The school board sent the application to the Comptroller for review. After the Comptroller issued a certificate for the Project, the school district entered into an appraised-value limitation agreement with the developer.

3

The Landowners are property owners in Callahan County who claim that the Project's construction affects their properties' market and aesthetic value.[4] They sued the Comptroller, seeking a declaratory judgment that the certificate of limitation on appraised value is void because they argue the Comptroller failed to follow statutory prerequisites before granting the certificate. Specifically, the Landowners allege the Comptroller issued the certificate despite the fact that the Project does not meet requirements under Chapter 313 and without completing a takings impact assessment under Chapter 2007 of the Texas Government Code. As to their Chapter 313 claim, the Landowners maintain that the Project is not "qualified property" under § 313.025 because the application reflects that it (1) was not located in a reinvestment zone or an enterprise zone as defined by the Tax Code and the Government Code, (2) was not owned or leased by the investor, and (3) did not meet the job-creation requirement or include a waiver of that requirement from the school board. Because the Comptroller did not "strictly interpret the criteria and selection guidelines" as Chapter 313 requires, the Landowners contend Hegar acted ultra vires in issuing the certificate.

The Landowners' takings claim arises from the Private Real Property Rights Preservation Act (the PRPRPA), which provides an avenue for property owners to sue political entities based on certain governmental actions resulting in a taking of property.[5] *See* TEX. GOV'T CODE ANN. §§ 2007.001–.045. The PRPRPA requires a governmental entity to prepare and publish a takings impact assessment before proceeding with proposed action that may result in a taking. *Id.* §§ 2007.042–43. The Landowners allege that the Comptroller's issuance of the certificate qualifies as a taking under the PRPRPA because the Project will devalue their properties by "approximately

---

[4] The Landowners report that Green's property is "surrounded" by the wind farm and Wilks' property is located on its eastern border.

[5] The PRPRPA provides a waiver of governmental immunity. TEX. GOV'T CODE ANN. § 2007.004.

4

50%" and "infringe on the use and enjoyment of [their] property." Because the Comptroller did not complete or provide notice of a takings impact assessment, the Landowners contend the certificate is void under the PRPRPA. *See id.* § 2007.044 ("A governmental action requiring a takings impact assessment is void if an assessment is not prepared.").

The Comptroller filed a general denial and plea to the jurisdiction. In its plea, the Comptroller argued the Landowners failed to plead a valid waiver of sovereign immunity because (1) there is no statutory waiver under Chapter 313, (2) their petition did not include the requisite jurisdictional facts to invoke the PRPRPA's limited waiver of immunity, and (3) they did not plead a valid ultra vires claim. The Comptroller also argued the Landowners lack standing to bring their claims because their injuries are speculative and they failed to plead a causal connection between the issuance of the certificate and any potential injury to their properties. The trial court held a hearing on the plea, which it summarily granted and dismissed the Landowners' claims with prejudice. This appeal followed.

## STANDARD OF REVIEW

Unless the Legislature expressly waives immunity, governmental units are immune from lawsuits. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009). Sovereign immunity deprives a trial court of subject matter jurisdiction. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). A defendant may challenge subject matter jurisdiction through a plea to the jurisdiction, which we review de novo. *Flores v. Texas Dep't of Criminal Justice*, 634 S.W.3d 440, 450–51 (Tex. App.—El Paso 2021, no pet.) (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004)).

The plea can attack both the pleaded facts as well as the existence of jurisdictional facts by attaching evidence to the plea. *Id.* (citing *Miranda*, 133 S.W.3d at 226–27). When there is no question of fact as to the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.*

5

at 450 (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009)). However, when the defendant challenges the existence of jurisdictional facts, the court must move beyond the pleadings and consider the evidence. *Texas Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (citing *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018)). The court can consider evidence necessary to resolve any dispute over those facts, even if the evidence implicates both the court's subject matter jurisdiction and the merits of the case. *Garcia*, 372 S.W.3d at 635.

Because this standard mirrors that of summary judgments, the plaintiff must raise at least a genuine issue of material fact to avoid dismissal if his factual allegations are challenged with supporting evidence necessary to the consideration of the plea to the jurisdiction. *Clark*, 544 S.W.3d at 771. In determining whether a material fact issue exists, we take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in his favor. *Heinrich*, 284 S.W.3d at 378 (citing *Miranda*, 133 S.W.3d at 228).

## ANALYSIS

The Landowners argue the trial court erred in granting the Comptroller's plea to the jurisdiction and maintain that the undisputed evidence reflects that the Comptroller did not comply with the statutory mandates in Chapter 313 of the Tax Code and Chapter 2007 of the Government Code before issuing the certificate. They contend they have standing to sue because they meet the requirements for taxpayer standing as well as the requirements to sue under the PRPRPA. The Landowners characterize the Comptroller's causal-connection point as "a fact-centric merits argument" that their pleadings withstand and point to record evidence that they maintain supports the causal connection between the issuance of the certificate and the diminished value of their properties. Though the Landowners advance additional arguments, we do not address them

6

because the standing issue is dispositive.[6]

"Standing is a constitutional prerequisite to maintaining suit[.]" *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001). "A challenge to a party's standing is an attack on the party's ability under the United States and Texas Constitutions to assert a claim." *Texas Med. Res., LLP v. Molina Healthcare of Texas, Inc.*, 659 S.W.3d 424, 440 (Tex. 2023) (quoting *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 700 (Tex. 2021)). Texas has adopted the federal standing requirements as outlined by the United States Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). *Data Foundry*, 620 S.W.3d at 696 (citing *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154–55 (Tex. 2012)); *see also Grassroots Leadership, Inc. v. Texas Dep't of Family & Protective Servs.*, 646 S.W.3d 815, 819 (Tex. 2022) ("Texas's standing requirements parallel federal standing doctrine."). "To maintain standing, a plaintiff must show: (1) an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged action; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Data Foundry*, 620 S.W.3d at 696.

The traceability requirement ensures there is "a causal connection between the plaintiff's injury and the defendant's conduct" and thus "serves as a means of identifying the proper defendants." *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 485 (Tex. 2018) (citing *Heckman*, 369 S.W.3d at 155). It also ensures "that a 'court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action

---

[6] Specifically, the Landowners contend Hegar acted ultra vires by issuing the certificate notwithstanding Chapter 313's requirements and thus Hegar's actions are not protected by sovereign immunity. They also maintain the Comptroller's office violated the PRPRPA by issuing the certificate without first following its requirements for a takings impact assessment, and because the PRPRPA contains an express statutory waiver of immunity, their suit should not be dismissed.

of some third party not before the court.'" *Heckman*, 369 S.W.3d at 155 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

Traceability does not require the defendant's challenged action to be the sole cause of harm. *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997). "An injury can be traceable to an action by a defendant when the defendant, 'by determinative or coercive effect upon the action of someone else,' caused injury to the plaintiff." *Grassroots Leadership*, 646 S.W.3d at 820 (quoting *Bennett*, 520 U.S. at 169). But "[s]tanding 'is ordinarily substantially more difficult to establish' when 'a causal relation between injury and challenged action depends upon the decision of an independent third party.'" *Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 543 (5th Cir. 2022) (en banc) (quoting *California v. Texas*, 141 S. Ct. 2104, 2117 (2021)).

Though the Landowners have sued the Comptroller, the injury they claim is not "fairly traceable" to its actions. The Landowners allege that the construction related to the Project "directly affects the[ir] properties' market and aesthetic value." But even if the Landowners are injured by the Project, that injury lacks the requisite causal connection to the Comptroller's actions because it is the school board—not the Comptroller—that decides whether to enter a tax-limitation agreement. *In re Stetson Renewables*, 658 S.W.3d at 294 n.3 (noting that the Chapter 313 "multi-step process . . . both begins and ends with a school district"). That is true despite the Landowners' insistence that the Project would not exist without the certificate: they point to the statement in the Project's application that "[w]ithout the 313 Value Limitation, the applicant would be forced to walk away from this project and spend the potential investment in other states where the rate of return is higher."[7] That may be so. But only the school board has the power to issue the appraised-

---

[7] This language appears directly targeted towards the § 313.026(c)(2) requirement that "[t]he comptroller may not issue a certificate for a limitation on appraised value under this chapter for property described in an application unless the comptroller determines that . . . the limitation on appraised value is a determining factor in the applicant's decision to invest capital and construct the project in this state."

value limitation, not the Comptroller. 34 TEX. ADMIN. CODE § 9.1054(f) (2016) (Comptroller of Pub. Accts., Limitation on Appraised Value on Certain Qualified Properties).

Though the Comptroller serves as a "gatekeeper" throughout this process, its evaluation "is neither the first step nor the last." *In re Stetson Renewables*, 658 S.W.3d 294 n.3. Indeed, while any Chapter 313 application without a certificate from the Comptroller "is doomed," "[t]here is no guarantee of ultimate success *even if* the Comptroller's evaluation is favorable." *Id.* at 294. In other words, the certificate for a limitation on appraised value is a necessary—but not sufficient—component of securing a tax-limitation agreement under Chapter 313, and whether the Comptroller issues a certificate in a Chapter 313 application has neither a determinative nor a coercive effect on the school board's ultimate decision to award an appraised-value limitation. *See id.*; TEX. TAX CODE ANN. § 313.025(b) ("The governing body of a school district is not required to consider an application for a limitation on appraised value."); 34 TEX. ADMIN. CODE § 9.1054(f) (2016) (Comptroller of Pub. Accts., Limitation on Appraised Value on Certain Qualified Properties) ("When presented a completed application . . . for which the comptroller has submitted a comptroller certificate for a limitation, the governing body of the school district shall either: (1) by majority vote adopt a written resolution approving the application . . . ; (2) by majority vote disapprove the application; or (3) take no official action and the application shall be considered disapproved on the 151st day after the application review start date."); *cf. Grassroots Leadership*, 646 S.W.3d at 819–20 (concluding state regulation regarding housing requirements at defendant's facilities had a "determinative or coercive effect" on the facilities because defendant could not deviate from those standards without jeopardizing their licensure).

The same analysis precludes the Landowners from establishing standing for their claim under the PRPRPA because it relies on the same alleged injury—i.e., the diminution of their property values. The Landowners insist that they have standing because they meet the statutory

9

requirements to maintain a PRPRPA claim, including that they are the owners of the purportedly affected properties. While certain statutes may introduce additional prerequisites to maintaining an action, the Texas Supreme Court has clarified "standing" refers to the three constitutional elements, not any additional restrictions on a plaintiff's ability to bring a particular suit. *Molina Healthcare*, 659 S.W.3d at 439–40; *see Data Foundry*, 620 S.W.3d at 696 ("[A] plaintiff does not lack standing simply because some other legal principle may prevent it from prevailing on the merits[.]"). Thus, the Landowners' argument that they have standing to sue under the PRPRPA because they meet its statutory merits requirements is inapposite to the extent that it ignores the standing requirements, as "[t]hese elements make up the 'irreducible constitutional minimum of standing,' and must all be present." *In re Hotze*, 627 S.W.3d 642, 647 (Tex. 2020) (Blacklock, J., concurring) (quoting *Lujan*, 504 U.S. at 559).

Nonetheless, the Landowners contend they have standing to sue as taxpayers and thus do not have to establish traceability. "In general, regardless of the claim asserted, 'a plaintiff must show that he has suffered a particularized injury distinct from the general public.'" *Perez v. Turner*, 653 S.W.3d 191, 199 (Tex. 2022) (quoting *Andrade v. Venable*, 372 S.W.3d 134, 137 (Tex. 2012)). But in Texas, "a narrow, judicially-created exception exists: a taxpayer has standing to sue to enjoin the illegal expenditure of public funds, and need not demonstrate a particularized injury." *Andrade*, 372 S.W.3d at 137. "Implicit in this rule are two requirements: (1) that the plaintiff is a taxpayer; and (2) that public funds are expended on the allegedly illegal activity." *Williams*, 52 S.W.3d at 179.

But as the Comptroller points out, "taxpayer standing is an exception *to the usual particularized injury requirement*." *Perez*, 653 S.W.3d at 200 (emphasis added); *see also id.* at 199 ("Texas law has long recognized an exception *to this particularity requirement* for taxpayers seeking to 'enjoin the illegal expenditure of public funds.'" (emphasis added) (quoting *Bland*

10

*Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 556 (Tex. 2000)); *Andrade*, 372 S.W.3d at 137 ("[A] taxpayer has standing to sue to enjoin the illegal expenditure of public funds, and *need not demonstrate a particularized injury*." (emphasis added)). Thus, the Landowners' taxpayer standing argument is responsive to the particularized-injury requirement of standing, not its traceability requirement. Because the Landowners have not shown their alleged injuries are fairly traceable to the Comptroller, we do not further consider whether they meet the requirements for taxpayer standing.[8]

Without showing that their claimed injury is fairly traceable to the Comptroller's actions, the Landowners do not have standing to pursue this suit.

## CONCLUSION

We affirm the trial court's judgment granting the Comptroller's plea to the jurisdiction and dismissing the Landowners' claims.

LISA J. SOTO, Justice

November 21, 2023

Before Palafox, J., Soto, J., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.) (Sitting by Assignment)

---

[8] It is worth noting that the Texas Supreme Court has called suits in which taxpayers are seeking to enjoin the illegal expenditure of public funds drastic and has required plaintiffs pursuing such suits to bring themselves strictly within the established rules. *Perez v. Turner*, 653 S.W.3d 191, 199 (Tex. 2022) (internal quotation marks omitted).