**Affirmed and Memorandum Opinion filed August 20, 2024.**



In The

# Fourteenth Court of Appeals

### NO. 14-23-00280-CV

## STEVEN HARVEY, Appellant

### V.

## MARK HENRY, GALVESTON COUNTY JUDGE; DARRELL APFFEL, GALVESTON COUNTY COMMISSIONER PRECINCT 1; JOE GIUSTI, GALVESTON COUNTY COMMISSIONER PRECINCT 2; STEPHEN D. HOLMES, GALVESTON COUNTY COMMISSIONER PRECINCT 3; ROBIN ARMSTRONG, GALVESTON COUNTY COMMISSIONER PRECINCT 4; AND DWIGHT D. SULLIVAN, GALVESTON COUNTY CLERK, Appellees

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 22-CV-1495**

## MEMORANDUM OPINION

Steven Harvey appeals the trial court's final order granting a plea to the jurisdiction and dismissing of Harvey's election law case against appellees Mark Henry, Galveston County Judge; Darrell Apffel, Galveston County Commissioner

Precinct 1; Joe Giusti, Galveston County Commissioner Precinct 2; Stephen D. Holmes, Galveston County Commissioner Precinct 3; Robin Armstrong, Galveston County Commissioner Precinct 4; and Dwight D. Sullivan, Galveston County Clerk. In his lawsuit, Harvey sought declaratory and injunctive relief based on his allegations that appellees' conduct has caused his votes in prior elections to be rendered illegal and would cause his votes in future elections to be illegal. In two issues, Harvey contends that the trial court failed to treat his petition as an emergency petition and erred in granting the plea to the jurisdiction. We affirm.

### *Governing Law*

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims asserted have merit. *Bland I.S.D. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction, which is essential to the authority of a court to decide a case. *See Clint I.S.D. v. Marquez*, 487 S.W.3d 538, 558 (Tex. 2016); *Bland I.S.D.*, 34 S.W.3d at 554. The existence of subject matter jurisdiction is a question of law that we review de novo. *See Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 451 (Tex. 2016).

One component of subject matter jurisdiction that may be challenged in a plea to the jurisdiction is standing, which is a prerequisite for maintaining suit. *AB Land Co. v. Sanders*, No. 14-22-00932-CV, 2024 WL 2139610, at *3 (Tex. App.—Houston [14th Dist.] May 14, 2024, no pet. h.). The standing inquiry "focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). For a party to have standing to raise a claim, (1) the party must have an injury in fact, i.e., a concrete and particularized injury that is actual or imminent and not hypothetical; (2) the injury must be fairly traceable to

2

the action complained of; and (3) the injury must be likely to be redressed by the requested relief. *See Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 155 (Tex. 2012).

A plea to the jurisdiction "may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights I.S.D. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When a plea challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We generally construe the pleadings liberally in favor of jurisdiction, take all factual assertions as true, and look to the pleader's intent. *See Heckman*, 369 S.W.3d at 150. When a plea challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties if necessary to resolve the jurisdictional issues raised. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). In doing so, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id*. at 228. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court should rule on the plea as a matter of law, but if there is a disputed issue of jurisdictional fact that implicates the merits, it must be reserved for the factfinder at trial. *See id*. This standard generally mirrors that of a traditional summary judgment under Texas Rule of Civil Procedure 166a(c). *Id*.

A plaintiff generally lacks standing to bring a lawsuit challenging the lawfulness of governmental acts or to insist the government and its officials adhere to the requirements of law based solely on their status as a citizen, voter, or taxpayer. *See Andrade v. NAACP of Austin*, 345 S.W.3d 1, 7 (Tex. 2011). "This is because '[g]overnments cannot operate if every citizen who concludes that a public

official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review.'" *Andrade v. Venable*, 372 S.W.3d 134, 136 (Tex. 2012) (quoting *Bland I.S.D.*, 34 S.W.3d at 555). A plaintiff generally must allege some injury distinct from that sustained by the public at large. *NAACP of Austin*, 345 S.W.3d at 8; *Ramsey v. Miller*, No. 02-22-00412-CV, 2023 WL 3645468, at *3 (Tex. App.—Fort Worth May 25, 2023, pet. denied) (mem. op.). To have standing in an equal protection, voting rights case, a plaintiff must allege a concrete, personal, and legally cognizable injury, not just a claim that the government should be administered according to governing law. *NAACP of Austin*, 345 S.W.3d at 8–9.

Government officials acting in their official capacity enjoy the same immunity as the governmental unit unless the official has engaged in ultra vires acts. *See Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011). While under this framework, sovereign or governmental immunity does not bar a suit to vindicate constitutional rights, immunity from suit is not waived if the constitutional claims are invalid or unviable. *See Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015); *Hous. Firefighters' Relief & Ret. Fund v. City of Hous.*, 579 S.W.3d 792, 800 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

### Harvey's Claims & Procedural History

From the outset, it is important to note the duality of the complaints that Harvey makes in his petition.[1] Harvey introduces his petition with the following explanation: "This action is an action to bring transparency, fairness, honesty, and

---

[1] Harvey has represented himself pro se in the trial court and in this appeal. Pro se litigants and appellants are held to the same standards as licensed attorneys and must comply with applicable laws and procedures. *Rogers v. City of Houston*, 627 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

exemplary quality to Texas elections and to hold responsible those government officials who violate the rights of Petitioner guaranteed by the U.S. and Texas Constitutions." He then goes on to allege that (1) for a variety of reasons, electronic voting systems ("EVS") (as opposed to paper ballots) are generally untrustworthy and vulnerable to interference, and (2) his constitutional right to vote was violated when appellees approved the use of an EVS for Galveston County elections that had not been properly certified. On the latter point, Harvey asserts that the testing laboratory that certified the adopted EVS was not properly accredited because its certificate of accreditation was signed by the executive director instead of the chairperson of the Election Assistance Commission ("EAC") and during a time period when the EAC lacked a governing quorum. Harvey contends that such certification was thus not "in accordance with the Voting System Test Laboratory Program Manual."

Harvey alleges that appellees' conduct violated and failed to comply with numerous state and federal constitutional provisions, state and federal election laws, and state and federal administrative rules.[2] Harvey also complains at length regarding actions of the Texas Secretary of State, who certified and approved the adopted EVS for use by Galveston County, as well as other government officials and bodies that were not made parties to this case. In citing the numerous state and federal statutes and administrative rules, Harvey does not allege that any of them provide for a private right of action. Instead, Harvey's complaint is that the alleged

_____

[2] It is not necessary to list all of the many provisions that Harvey asserts were violated or not complied with, but the list includes the First, Ninth, Fourteenth, and Fifteenth Amendments to the United States Constitution; Texas Constitution Article I, sections 3, 13, 17, 19, and 29 and Article VI, section 2; 18 U.S.C. section 245; 42 U.S.C sections 1983 and 1985; 52 U.S.C. section 10101; Texas Election Code sections 52.062, 122.01(3)(4), 122.031(c), 123.001, 123.002, 129.054(a), and 373.081; and Texas Penal Code sections 37.03, 37.09, and 37.10. U.S. Const. amend. I, IX, XIV, XV; Tex. Const. art. I, §§ 3, 13, 17, 19, 29, art. VI, § 2; 18 U.S.C. § 245; 42 U.S.C § 1983, 1985; 52 U.S.C. § 10101; Tex. Elec. Code §§ 52.062, 122.01(3)(4), 122.031(c), 123.001, 123.002, 129.054(a), 373.081; Tex. Penal Code §§ 37.03, 37.09, 37.10.

violations and failure to comply with these laws and rules governing the conduct of elections impinged on his right to vote as protected by the United States and Texas constitutions. As Harvey encapsulates in his response to appellees' plea to the jurisdiction, he alleges: "the Respondents approved, adopted, and purchased [EVS] that do not comply with the legislative standards . . . therefore, causing the nullification of [Harvey's] vote during the elections since 2020."

Among the relief Harvey seeks in his lawsuit, he requests that the trial court (1) "vacate[] and set[] aside all uncertified and illegal voting systems/equipment, software, and modifications used to unlawfully conduct elections"; (2) "implement a precinct level hand-marked paper ballot and hand counting system"; (3) "grant[] an emergency injunction prohibiting [appellees from] certifying the results from the November 8, 2022 election"; (4) declare appellees have violated several constitutional and statutory provisions; (5) "grant[] a permanent injunction prohibiting [appellees] from requiring or permitting voters to have votes cast or tabulated using any electronic voting systems, pollbooks, or devices"; (6) "grant[] an emergency injunction prohibiting [appellees] destruction/deletion of any and all election records . . . from the 2020, 2021, and 2022 elections"; (7) enjoin appellees "from implementing and/or enforcing the certifications of all election results derived from electronic voting systems/equipment, software and modifications that are not in compliance with the applicable law"; (8) declare appellees' "approvals/adoptions of all voting system/equipment, software, and modifications are void and without legal force or effect"; and (9) order appellees "to terminate all employees, agents, and contractors shown to have had knowledge of or acquiesced in the improper acts described here."

In their plea, appellees challenged both Harvey's pleadings and his jurisdictional facts. Among other arguments, appellees asserted that Harvey lacked

standing, had "pleaded no factual support that his vote has been manipulated or miscounted[, had] failed to show he has personally suffered any concrete and particularized injury," and had failed to establish that he has a viable cause of action that would waive appellees' immunity. Appellees further pointed out that Harvey has acknowledged voting in past elections and has not alleged that his votes have been rejected or otherwise uncounted. Appellees noted that Harvey's petition simply "makes conclusory allegations about his general distrust of, and generalized grievances about, each and every electronic voting system throughout the State" and "theorizes and speculates that future elections could hypothetically be manipulated by third-party bad actors . . . without evidence" but "fails to provide any factual allegations of actual injury." Attached to appellees' plea is a letter from the Texas Secretary of State's office stating approval for Galveston County's EVS contract with Hart InterCivic and confirming that the system was certified for use in Texas. Also attached is a letter from the EAC stating that the Hart InterCivic system had been approved.

In response to the plea, Harvey appeared to acknowledge that he needed to plead a real, concrete, and particularized injury to have standing and repeated his allegation that appellees' approval of an EVS that was not certified by a properly accredited testing laboratory caused his votes to be "effectively illegalized," thereby violating various provisions of the United States and Texas constitutions. He further argued that approval of the EVS by the secretary of state did not absolve county officials from a duty to only approve properly certified systems. In a supplemental response, Harvey asserted that appellees had been informed that the EVS in use in Galveston County had not been legally certified but that they continued to use the EVS thus negating Harvey's votes. Harvey did not explain when, how, or by whom appellees had been so informed.

At the hearing on the plea, appellees reemphasized that Harvey had alleged and could prove no particularized injury, had no private right of action under any of his cited statutes, and did not have a viable claim that could waive appellees' immunity. The trial court admitted as exhibits the same two documents discussed above that were attached to the plea itself—letters from the Texas Secretary of State and the EAC approving Galveston County's EVS contract with Hart InterCivic and confirming that the system was certified and approved. In response, Harvey argued that the EVS was actually not properly certified, and he offered into evidence the accreditation certificate for a testing laboratory that expired in 2017. Harvey claimed, without citing any evidence, that the 2017 certificate was the last certificate for that particular testing laboratory before the 2020 election, which he says means the laboratory was not accredited for the 2020 election cycle. The trial court granted the plea and dismissed Harvey's lawsuit with prejudice.

### Analysis

There may be no right more sacred in a democracy than the right to vote. *See, e.g.*, *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined."); *NAACP of Austin*, 345 S.W.3d at 12 ("The right to vote is fundamental, as it preserves all other rights.") (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)). Harvey alleges appellees have infringed on his right to vote, and we take that allegation very seriously. However, simply asserting that an important right is at stake does not alleviate a party of demonstrating he has standing to assert the claims raised. Harvey has failed to establish that he has standing or a viable claim for several reasons.

**Generalized grievances.** To begin with, while it is unclear if Harvey's

8

voluminous generalized complaints regarding the alleged untrustworthiness and vulnerability of EVS were intended to state claims in themselves, to the extent Harvey intended as much, these allegations "amount only to a generalized grievance shared in substantially equal measure by all or a large class of citizens." *NAACP of Austin*, 345 S.W.3d at 15. As such, they do not demonstrate a concrete and particularized injury that is actual or imminent and not hypothetical and do not afford him standing. *Id*. at 15–18 (holding that plaintiffs pleading similar allegations regarding EVS that did not produce a contemporaneous paper record did not have standing); *Heckman*, 369 S.W.3d at 155 (requiring an actual or imminent, concrete and particularized injury to demonstrate standing); *see also Ramsey*, 2023 WL 3645468, at *4 (rejecting similar grievances regarding EVS in part because such complaints amounted to "citizens . . . insist[ing] that the government follow the law" without alleging disparate treatment or a particularized injury) (quoting *NAACP of Austin*, 345 S.W.3d at 8). Such complaints are better raised in the realm of politics and not in a courtroom. *See NAACP of Austin*, 345 S.W.3d at 18. To the extent Harvey intended his generalized grievances to constitute claims in this lawsuit, the district court was without jurisdiction to consider them.

**Equal protection.** To the extent Harvey intended to raise an equal protection claim based on the allegation that people required to use EVS are treated differently than people who use paper ballots, he has not stated a viable claim. *See id*. at 13 (holding similar equal protection challenge to paperless EVS was unviable and quoting *Weber v. Shelley*, 347 F.3d 1101, 1106–07 (9th Cir. 2003) ("[I]t is the job of democratically-elected representatives to weigh the pros and cons of various balloting systems. So long as their choice is reasonable and neutral, it is free from judicial second-guessing.")); *see also Klumb*, 458 S.W.3d at 13 (explaining that an

official's immunity from suit is not waived if the constitutional claims are invalid or unviable). As the court pointed out in *NAACP of Austin*, there are many benefits to EVS over paper-only ballots and they do not impose severe restrictions on voters. *Id*. at 12–14 (concluding that the adoption of EVS was "a reasonable, nondiscriminatory choice . . . justified by the State's important regulatory interests" and discussing other cases coming to the same conclusion). In light of the Texas Supreme Court's holding in *NAACP of Austin,* Harvey has not presented a viable case that he was unconstitutionally disadvantaged by voting on EVS equipment rather than a paper ballot.[3]

**Concrete and particularized injury.** As set out above, Harvey's specific claim of a concrete and particularized injury is based on the allegation that appellees violated his constitutional rights when they approved an EVS for use in Galveston County that was not properly certified. Specifically, Harvey asserts that the EVS in question had been certified by a testing laboratory that was not properly accredited because its certificate of accreditation was signed by the executive director instead of the chairperson of the EAC and during a time period when the EAC lacked a governing quorum. Harvey has likewise failed to establish standing to bring this claim for several reasons.

To begin with, Harvey has not provided any support for his assertion that appellees had a duty to ensure that the EVS they adopted was certified by a properly accredited testing laboratory. The Election Code clearly places the responsibility to ensure proper EVS certification squarely on the secretary of state, not county officials. *See* Tex. Elec. Code §§ 122.031(a) ("Before a voting system

---

[3] To the extent Harvey intended to support his equal protection claim with evidence, we remain unpersuaded that his claim is viable. Much of Harvey's supposed evidence consists of citations to websites—many of dubious provenance—that contain allegations of problems and potential problems with EVS but do not provide evidence reviewable in this case.

or voting system equipment may be used in an election, the system and a unit of the equipment must be approved by the secretary of state as provided by this subchapter."); 123.035 ("A contract for the acquisition of voting system equipment . . . must be . . . approved by the secretary of state as to compliance of the voting system and voting system equipment with the applicable requirements."); *see also Ramsey*, 2023 WL 3645468, at \*4 ("Parker County plays no role in the certification process; rather, this is the sole responsibility of the Texas Secretary of State. . . . Thus, Appellants have failed to show a causal connection between Parker County's actions and the potential injury that they allege."). Appellees presented evidence along with their plea showing that the secretary of state had (1) provided notice that the EVS in question was certified and (2) expressly approved of Galveston County's contract with the EVS provider. Harvey does not challenge this evidence, and he did not sue the secretary of state in this case. He has not demonstrated standing against appellees based on a testing laboratory's alleged lack of proper accreditation. *See Heckman*, 369 S.W.3d at 155 (requiring injury traceable to the defendant's conduct to demonstrate standing); *Ramsey*, 2023 WL 3645468, at \*4.[4]

Next, Harvey has not established that the laboratory in question was not properly certified. Harvey refers to a program manual published by the EAC for use in its laboratory accreditation program for the contention that the laboratory's certificate must be signed by the EAC chairperson and that the EAC must have a governing quorum at the time a certificate is signed. However, Harvey does not make any attempt to show that statements in this 2015 manual had the force of law

---

[4] In a supplemental response to the plea, Harvey additionally asserted that appellees were informed that the EVS had not been legally certified but they continued to use them anyway. Harvey neither alleges when, how, or by whom the alleged notification occurred nor provides any evidence supporting the conclusory allegation or refuting appellees' evidence that the EVS were properly certified and approved.

or reflected binding law. As appellees evidence showed, the EAC issued an accreditation certificate for the testing laboratory and the Texas Secretary of State confirmed the certification and approved the EVS in question for use in Texas. Harvey has not demonstrated that those actions violated any laws, much less that he can seek redress for any such violations by suing appellees.

Lastly, Harvey has offered no factual or legal support for his assertion that his vote has been "effectively illegalized." Even if Harvey had presented evidence that the testing laboratory had not been properly accredited, he makes no cogent argument and cites no law suggesting that the result would be that all votes cast in Texas on EVS tested by that laboratory would be nullified. Harvey cites Election Code section 276.013, regarding election fraud, but he does not explain how it could apply to the facts he alleges. Tex. Elec. Code § 276.013. The provision classifies certain offenses for purposes of punishment but does not itself provide for vote nullification. *See id*. Harvey also cites Election Code section 1.0015 for the proposition that illegal votes should not be counted, but that provision provides no support for his contention that his vote was rendered illegal in any past election or would be rendered illegal in any future election. *Id*. § 1.0015 ("It is the intent of the legislature that the application of this code and the conduct of elections be uniform and consistent throughout this state to reduce the likelihood of fraud in the conduct of elections, protect the secrecy of the ballot, promote voter access, and ensure that all legally cast ballots are counted."). In short, Harvey has not demonstrated a concrete and particularized injury that is actual or imminent and not hypothetical, that is fairly traceable to appellees' conduct, and which can be redressed by the requested relief. *See Heckman*, 369 S.W.3d at 155.

Because Harvey has not shown that he has standing in this lawsuit or a viable claim against appellees, the trial court did not err in granting the plea to the

jurisdiction and dismissing Harvey's claims. Accordingly, we overrule his two issues.

We affirm the trial court's final order.


/s/     Frances Bourliot
Justice


Panel consists of Justices Bourliot, Zimmerer, and Spain.